**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

|  |  |
|---|---|
| In re: | :    Chapter 11 Case No. |
|  | : |
| LIC CROWN MEZZ BORROWER LLC, *et al.*, | :    [           ] |
|  | :    (Joint Administration Pending) |
| Debtors. | : |
|  | : |

---------------------------------------------------------------- X

## DEBTORS' PREPACKAGED LIQUIDATING CHAPTER 11 PLAN

KLESTADT & WINTERS, LLP
Tracy L. Klestadt, Esq.
Joseph C. Corneau, Esq.

570 Seventh Avenue
17th Floor
New York, NY 10018-6314
Telephone:  (212) 972-3000
Facsimile:  (212) 972-2245
Email:  tklestadt@klestadt.com
       jcorneau@klestadt.com

*Proposed Attorneys for Debtors and*
*Debtors in Possession*
Dated:  October 7, 2013

1

## TABLE OF CONTENTS

ARTICLE I        DEFINITIONS .................................................................................4

ARTICLE II       METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS
                 AND GENERALPROVISIONS AND CLASSIFICATION OF
                 CLAIMS AND INTERESTS ....................................................12

    2.1.   General Rules of Classification ..........................................................12
    2.2.   Administrative Claims, Priority Tax Claims and Fee Claims.....................12
    2.3.   Bar Date for Administrative Claims .....................................................12
    2.4.   Bar Date for Fee Claims ...................................................................12
    2.5.   Classification of Claims and Equity Interests .........................................12

ARTICLE III      TREATMENT OF UNCLASSIFIED CLAIMS .............................13

    3.1.   Administrative Claims ......................................................................13
    3.2.   Priority Tax Claims .........................................................................13
    3.3.   Fee Claims ....................................................................................13

ARTICLE IV       CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
                 AND EQUITY INTERESTS .....................................................13

    4.1.   Class 1 Other Priority Claims ............................................................14
    4.2.   Class 2 Mortgage Lender Claim .........................................................14
    4.3.   Class 3 Mezzanine Lender Claim ........................................................14
    4.4.   Class 4 General Unsecured Claims ......................................................15
    4.5.   Class 5 Equity Interests....................................................................15
    4.6.   Reservation of Rights ......................................................................15

ARTICLE V        MEANS FOR IMPLEMENTATION OF THE PLAN ....................15

    5.1.   Implementation on the Effective Date ..................................................16
    5.2.   Funding for this Plan.......................................................................16
    5.3.   Vesting of Assets in the Debtors.........................................................16
    5.4.   Continuing Existence .......................................................................16
    5.5.   Closing or Dismissal of the Chapter 11 Cases........................................16
    5.6.   Corporate Action ............................................................................16

ARTICLE VI       RELEASES .........................................................................17

    6.1.   Releases........................................................................................17
    6.2.   Injunctions....................................................................................18

ARTICLE VII      DISTRIBUTIONS UNDER THE PLAN......................................19

    7.1.   Distributions for Claims Allowed as of the Effective Date .........................19
    7.2.   Waiver of Certain Insider Claims .......................................................19

23327496v.2

7.3.     Delivery of Distributions ............................................................................19
7.4.     Reserves for Administrative, Priority Tax and Other Priority Claims.......19
7.5.     Reserves for Disputed Claims......................................................................20
7.6.     Claims Objection Deadline ..........................................................................21
7.7.     Settlement of Disputed Claims ....................................................................21
7.8.     Unclaimed Property .....................................................................................21
7.9.     Release of Liens ...........................................................................................21
7.10.    Fractional Cents ...........................................................................................21
7.11.    Payments of Less than Twenty-Five Dollars ..............................................21

ARTICLE VIII    UNEXPIRED LEASES AND EXECUTORY CONTRACTS........................21

8.1.     Assumption of All Agreements ....................................................................22
8.2.     Claims for Damages.....................................................................................22

ARTICLE IX        CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE................22

9.1.     Conditions to Confirmation of the Plan ......................................................23
9.2.     Conditions to Effectiveness of the Plan ......................................................23
9.3.     Effect of Failure of Condition......................................................................23
9.4.     Notice of the Effective Date; Actions Taken on Effective Date.................23

ARTICLE X        RETENTION OF JURISDICTION .....................................................................23

10.1.    Jurisdiction...................................................................................................24

ARTICLE XI       MISCELLANEOUS PROVISIONS ....................................................................25

11.1.    Pre-Confirmation Modification ...................................................................25
11.2.    Post-Confirmation Immaterial Modification ...............................................25
11.3.    Post-Confirmation Material Modification ...................................................25
11.4.    Withdrawal or Revocation of the Plan.........................................................25
11.5.    Payment of Statutory Fees ...........................................................................26
11.6.    Successors and Assigns................................................................................26
11.7.    Exculpation ..................................................................................................26
11.8.    Comprehensive Settlement of Claims and Controversies............................27
11.9.    Preservation of Insurance.............................................................................27
11.10.   Cramdown.....................................................................................................27
11.11.   Governing Law .............................................................................................27
11.12.   Notices ..........................................................................................................27
11.13.   Saturday, Sunday or Legal Holiday .............................................................29
11.14.   Exemption From Transfer Taxes .................................................................29
11.15.   Severability ..................................................................................................29
11.16.   Headings .......................................................................................................30

23327496v.2

## INTRODUCTION

LIC Crown Mezz Borrower LLC, LIC Crown Leasehold Owner LLC and LIC Crown Fee Owner LLC, the Debtors[1] herein, hereby propose this Prepackaged Liquidating Chapter 11 Plan pursuant to section 1121 of the Bankruptcy Code. Reference is made to the Disclosure Statement for risk factors and a summary and analysis of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article XI of this Plan, the Debtors expressly reserve the right to alter, amend, supplement or modify this Plan, one or more times, before its substantial consummation.

## ARTICLE I

## DEFINITIONS

1.1.    **Scope of Definitions.**  As used in this Plan, the following terms shall have the respective meanings specified below. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2.    **"Accrued"** shall mean an expense incurred but not yet billed for nor paid.

1.3.    **"Adequate Protection Lien"** shall have the meaning ascribed to it in the Cash Collateral Order.

1.4.    **"Administrative Claim"** shall mean a Claim under section 503(b) (including, without limitation, all administrative claims under sections 503(b)(9) and 1114(e)(2) of the Bankruptcy Code) or determined to be an Allowed Administrative Claim by a Final Order that is entitled to priority under sections 507(a)(1) or 507(b) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Cases including, without limitation, any actual and necessary expenses of operating the businesses of the Debtors or preserving the Estates incurred after the Petition Date, and any and all fees and expenses of Professionals Filed under sections 330, 331 or 503 of the Bankruptcy Code.

1.5.    **"Administrative Claims Bar Date"** shall have the meaning ascribed to such term in section 2.3 of this Plan.

1.6.    **"Administrative Claims Reserve"** shall have the meaning ascribed to such term in section 7.4 of this Plan.

1.7.    **"Allowed"** shall mean, with reference to any Claim: (a) any Claim, proof of which is/was Filed with the Bankruptcy Court or the Debtors' court-appointed claims agent, to the extent one is appointed, on or before the date designated by the Bankruptcy Court as the last

---

[1]  Capitalized terms not defined in this Introduction shall have the meanings set forth in Article I of this Plan.

4

date(s) for Filing a proof of Claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been Filed within the applicable period of limitation (if any) for objection to Claims fixed by the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court (allowing such Claim in whole or in part); (b) a Claim that is allowed (i) in any contract, instrument or other agreement entered into in connection with the Plan, (ii) in a Final Order, or (iii) pursuant to the terms of this Plan; or (c) a request for payment of an Administrative Claim, which is made before the Administrative Claims Bar Date, or otherwise has been deemed timely asserted under applicable law, and is an Administrative Claim as to which no objection to allowance thereof has been Filed within the applicable deadline pursuant to section 2.3 of the Plan.  Except as otherwise specified in this Plan or a Final Order, the amount of an Allowed Claim shall not include interest on such Claim after the Filing of the Chapter 11 Cases.

1.8.    **"Authority Litigation"** shall mean any litigation relating to whether Borrower Parties had the requisite authority to file the Chapter 11 Cases.

1.9.    **"Bankruptcy Code"** shall mean title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.10.    **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Southern District of New York or such other court as may hereafter be granted jurisdiction over the Chapter 11 Cases.

1.11.    **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

1.12.    **"Bar Date"** shall mean the date set by the Bankruptcy Court as the last day to File proofs of Claim pursuant to the Bar Date Order to be entered by the Bankruptcy Court.

1.13.    **"Bar Date Order"** shall mean the order to be entered by the Bankruptcy Court setting the Bar Date.

1.14.    **"Business Day"** shall mean any day other than a Saturday, Sunday or legal holiday, as such term is defined in Bankruptcy Rule 9006.

1.15.    **"Cash"** shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.16.    **"Cash Collateral Order"** shall mean the interim and/or final Order(s) (i) Authorizing the Use of Cash Collateral, (ii) Granting Adequate Protection, (iii) Authorizing the Debtors to Obtain Unsecured Debt, (iv) Modifying the Automatic Stay, and (v) Scheduling a Final Hearing.

1.17.    **"Chapter 11 Cases"** shall mean the chapter 11 cases pending for the Debtors.

1.18.    **"Claim"** shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.

1.19.    **"Class"** shall mean a category of holders of Claims or Equity Interests, as classified pursuant to Article II of this Plan.

1.20.    **"Class 4 Disputed Claims Reserve"** shall have the meaning ascribed to such term in section 7.4 of this Plan.

1.21.    **"Committee"** shall mean the Official Committee of Unsecured Creditors, if any, appointed by the Office of the United States Trustee and as reconstituted from time to time and existing as of the Confirmation Date.

1.22.    **"Confirmation"** shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.23.    **"Confirmation Date"** shall mean the date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code.

1.24.    **"Confirmation Hearing"** shall mean the hearing to confirm the Plan.

1.25.    **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.26.    **"Creditor"** shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

1.27.    **"Debtors"** shall mean Mezzanine Borrower, Fee Owner and Leasehold Owner, each a Debtor.

1.28.    **"Disclosure Statement"** shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.29.    **"Disputed Claim"** shall mean any Claim, including any Administrative Claim, which has not become an Allowed Claim pursuant to the Plan or a Final Order.

1.30.    **"Disputed Cure Amounts"** shall have the meaning ascribed to such term in section 8.1 of this Plan.

1.31.    **"Effective Date"** shall mean the first Business Day following the date on which each of the conditions set forth in sections 9.1 and 9.2 of this Plan have been satisfied or waived in accordance with such sections; provided that if a stay of the Confirmation Order is in effect, then the Effective Date shall mean the first Business Day after such stay is no longer in effect.

1.32.    **"Entity"** shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.33.    **Equity Interest**" shall mean the interest of any holder of an equity security of the Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in the Debtors, whether or not transferable, or any option, warrant or right, contractual or otherwise, to acquire any such interest.

1.34.    **Estates**" shall mean the estates of the Debtors.

1.35.    **Fee Claim**" shall mean a claim under sections 327, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a Professional for services rendered or reimbursement of expenses incurred in the Chapter 11 Cases on or prior to the Effective Date which has been approved by a Final Order (including expenses of the members of the Committee, if any).

1.36.    **Fee Claim Bar Date**" shall have the meaning ascribed to such term in section 2.4 of this Plan.

1.37.    **Fee Owner**" shall mean LIC Crown Fee Owner LLC, a Delaware limited liability company with a principal business office located at 601 West 26th Street, Suite 1260, New York, New York 10001.

1.38.    **File**," **Filed**" or **Filing**" shall mean file, filed or filing with the Bankruptcy Court, or with respect to proofs of Claim, proofs timely and properly transmitted to the Clerk of the Bankruptcy Court or to the Debtors' claims agent, to the extent one is appointed pursuant to an order of the Bankruptcy Court.

1.39.    **Final Order**" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases, or the docket of any such other court, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof): (a) the time to appeal, seek leave to appeal or certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for leave to appeal or certiorari, or request for reargument or further review or rehearing has been timely filed without the filing of an appeal, or (b) any appeal that has been or may be taken or any petition for certiorari or leave to appeal or request for reargument or further review or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari or leave to appeal was sought, or to which the request was made, and no further appeal or petition for certiorari or leave for appeal or request for reargument or further review or rehearing has been or can be taken or granted.

1.40.    **General Unsecured Claim**" shall mean any unsecured, non-priority Claim, including, without limitation, any Indemnification Claim, that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Fee Claim or Secured Claim.

1.41.    **Impaired**" shall have the meaning ascribed to such term in section 1124 of the Bankruptcy Code.

1.42.    **Indemnification Claim**" shall mean a Claim for indemnification or advancement.

23327496v.2

1.43.   "**Intangibles**" means the assignable (at no cost or expense to the Borrower Parties) contract rights and intangible property pertaining to the Real Property and/or the Personal Property, including, without limitation, (i) guaranties and warranties, (ii) all designs, plans, drawings, specifications and surveys, (iii) all consents, licenses, permits, registrations, certificates, authorizations and other approvals, (iv) all Property-specific telephone and telecopy numbers, domain names, restaurant names and other trade names, general intangibles, business records, group and guest history, and client databases, (v) the Operating Agreements (herein defined); (vi) all domain names and all trademarks, trademark applications and registered trademarks used or held for use in connection with the operation of the Property, together with the use and goodwill associated therewith; and (vii) all accounts receivable, refunds, deposits, rent, profit and income, to the extent such Intangibles are in the Borrower Parties' possession or control.  For the avoidance of doubt, Intangibles shall not include equity interests in any of the Debtors.

1.44.   "**Intercreditor Agreement**" shall mean that certain Intercreditor Agreement by and between CIBC, Inc., predecessor-in-interest to Mortgage Lender, as Mortgage Lender and Petra Mortgage Capital Corp. LLC, predecessor-in-interest to Mezzanine Lender, as Mezzanine Lender, dated as of May 31, 2006.

1.45.   "**Leasehold Owner**" shall mean LIC Crown Leasehold Owner LLC, a Delaware limited liability company with a principal business office located at 601 West 26th Street, Suite 1260, New York, New York 10001.

1.46.   "**Leases**" shall mean all agreements for the use and occupancy of the Real Property, or any portion thereof.

1.47.   "**Liens**" shall mean valid and enforceable liens, mortgages, security interests, pledges, charges, encumbrances or other legally cognizable security devices of any kind.

1.48.   "**Mezzanine Acquisition Entity**" shall mean one or more of the Mezzanine Lender's designees formed for the purpose of acquiring the Real Property pursuant to the Plan, including FACTORY OWNER LLC, a Delaware limited liability company.

1.49.   "**Mezzanine Lender**" shall mean Factory Mezz LLC.

1.50.   "**Mezzanine Lender Claim**" shall have the meaning ascribed to it in section 4.3 of this Plan.

1.51.   "**Mezzanine Lender Allowed Deficiency Claim**" shall have the meaning ascribed to it in section 4.3 of this Plan.

1.52.   "**Mezzanine Loan**" shall mean that certain loan in the original principal amount of $28,300,000.00 made by Mezzanine Lender (as successor-in-interest to Petra) to Mezzanine Borrower on or about May 31, 2006.

1.53.    **"Mezzanine Borrower"** shall mean LIC Crown Mezz Borrower LLC, a Delaware limited liability company with a principal business office located at 601 West 26th Street, Suite 1260, New York, New York 10001.

1.54.    **"Mezzanine Loan Documents"** shall mean those documents listed on Exhibit B to this Plan, as such documents may be amended, restated, replaced, supplemented or otherwise modified from time to time.

1.55.    **"Mortgage Lender"** shall mean U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, successor by merger to LaSalle Bank National Association for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC15, Commercial Mortgage Pass-Through Certificates, Series 2006-CIBC15.

1.56.    **"Mortgage Lender Allowed Secured Claim"** shall have the meaning ascribed to it in section 4.2 of this Plan.

1.57.    **"Mortgage Loan"** shall mean that certain loan in the original principal amount of $77,000,000.00 made by Mortgage Lender (as successor-in-interest to CIBC, Inc.) to Fee Owner and Leasehold Owner on or about May 31, 2006, which grants to Mortgage Lender a lien on, and security interest in, the Real Property.

1.58.    **"Mortgage Loan Amount"** shall mean, as of any date, an amount equal to the outstanding principal balance of the Mortgage Loan (which is agreed by the Debtors, Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity to be in the amount of $71,354,393.64  as of October 4, 2013) plus all accrued and unpaid interest on the Mortgage Loan at the non-default interest rate as of the date in question (which is agreed by the Debtors, Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity to be in the amount of $54,689.76 as of October 4, 2013), as well as all costs (including reasonable attorneys' fees and expenses) incurred by Mortgage Lender in connection with this Plan and the transactions contemplated hereby up to the amount of $150,000.00 (any attorneys' fees and expenses in excess of such amount to be borne by the Mortgage Lender).

1.59.    **"Mortgage Loan Documents"** shall mean those documents listed on Exhibit A to this Plan, and as such documents may be amended, restated, replaced, supplemented or otherwise modified from time to time.

1.60.    **"Opposition"** shall mean the pleading filed by the Debtors seeking dismissal of the Authority Litigation.

1.61.    **"Other Priority Claim"** shall mean any Claim against the Debtors entitled to priority in payment under section 507(a) of the Bankruptcy Code other than an Administrative Claim, Fee Claim or Priority Tax Claim.

1.62.    **"Person"** shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

23327496v.2

1.63.    "**Personal Property**" shall mean the fixtures, machinery, equipment and other tangible personal property (excluding any items owned by tenants under the Leases) installed in, located at or used in connection with the Real Property

1.64.    "**Petition Date**" shall mean the date upon which the Debtors File their petitions under Chapter 11 of the Bankruptcy Code.

1.65.    "**Petra**" shall mean Petra Mortgage Capital Corp. LLC.

1.66.    "**Plan**" shall mean this Prepackaged Liquidating Chapter 11 Plan, all exhibits hereto and any amendments or modifications hereof made in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

1.67.    "**Priority Tax Claim**" shall mean any Claim for taxes against the Debtors entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.68.    "**Professionals**" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered to the Debtors prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.69.    "**Property**" shall mean collectively, the Real Property, Leases, the Personal Property and the Intangibles.

1.70.    "**PSA**" shall mean that certain Plan Support and Cooperation Agreement dated October 2, 2013 between and among Mortgage Lender, Mezzanine Lender, the Debtors and the Guarantors (defined below).

1.71.    "**Real Property**" shall mean that certain real property owned by Fee Owner, commonly known as the Factory Building, located at 47-44 31st Street, Block 282, Lot 1, Long Island City, County of Queens, New York, together with all improvements now or hereafter located thereon.

1.72.    "**Rejection Damage Claim**" shall mean a Claim arising from the rejection, under section 365 of the Bankruptcy Code or under this Plan, of an executory contract or unexpired lease of a Debtor.

1.73.    "**Released Parties**" means (i) any guarantor under the Mortgage Loan and/or Mezzanine Loan, including, Mark Karasick and 30th Place Holdings, LLC (collectively, the "**Guarantors**," and together with the Debtors, the "**Borrower Parties**"), (ii) Mortgage Lender and C-III Asset Management LLC ("**C-III**") and Wells Fargo Bank, National Association ("**Wells Fargo**"), (iii) Mezzanine Lender, (iv) the Mezzanine Acquisition Entity, and (v) the officers, directors and employees of the Debtors, including but not limited to Steven A. Carlson as the Debtors' chief restructuring officer (the "**CRO**"), and, in the case of each of the Debtors and the parties referred to in clauses (i)-(v), each such Entity's respective direct and indirect parents, subsidiaries and affiliates, together with each of their respective shareholders, members,

managers, general partners, limited partners, officers, directors, investors, financial advisors, investment bankers, employees, employers, agents, representatives, attorneys and advisors or consultants, including specifically Mark Karasick and Victor Gerstein.

1.74.    **"Schedules"** shall mean each of the Debtor's Schedules of Assets and Liabilities and Statements of Financial Affairs Filed pursuant to Bankruptcy Rule 1007 as they may be amended from time to time.

1.75.    **"Secured Claim"** shall mean all or a portion of a Claim existing on the Petition Date that constitutes a secured claim as defined in section 506(a)(1) of the Bankruptcy Code, as finally allowed and approved by the Bankruptcy Court.

1.76.    **"Security Deposits"** shall mean security deposits held by the Debtors as of the Petition Date posted by tenants of the Debtors in accordance with the terms of their Leases with the Debtors and applicable non-bankruptcy law, and not otherwise applied in accordance with such Leases.

1.77.    **"Statutory Fees"** shall mean all fees payable pursuant to section 1930 of Title 28 of the United States Code and section 3717 of Title 31 of the United States Code.

1.78.    **"Transfer Documents"** shall mean (i) a bargain and sale deed without covenant conveying all of Fee Owner's right, title and interest in the Property duly executed by Fee Owner, (ii) an assignment of Leasehold Owner's interest in the ground lease encumbering the Property duly executed by Leasehold Owner without recourse against or warranty by Leasehold Owner, and (iii) such other documentation as reasonably may be required by Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity to evidence a transfer to the Mezzanine Acquisition Entity of all of the Debtors' and all Debtor-related parties' right, title and interest in the Property, as is, where is, without representation or warranty by, or recourse against, the Debtors, subject to permitted encumbrances under the Mezzanine Loan Documents.

1.79.    **"Undisputed Cure Amounts"** shall have the meaning ascribed to such term in section 8.1 of this Plan.

1.80.    **"Unimpaired"** shall mean, with respect to a Class of Claims, a Claim that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

All terms not expressly defined herein shall have the respective meanings given to such terms in section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code.

Unless otherwise specified herein, any reference to an Entity as a holder of a Claim or Equity Interest includes, with respect to such Claim or Equity Interest, that Entity's successors, assigns and affiliates.  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All Exhibits to this Plan are incorporated into, and are a part of, this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be timely Filed in accordance with this Plan. Holders of Claims and Equity Interests may obtain a copy of the Filed Exhibits upon written request to the Debtors. Upon their Filing, the Exhibits may be inspected in the office of the Clerk of the Bankruptcy Court or its designee during normal business hours. The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

## ARTICLE II

## METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND GENERALPROVISIONS AND CLASSIFICATION OF CLAIMS AND INTERESTS

2.1.    **General Rules of Classification.**  Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim qualifies within the description of that Class and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class and a more generally-defined Class, it shall be included in the more specifically defined Class.

2.2.    **Administrative Claims, Priority Tax Claims and Fee Claims.**  Administrative Claims, Priority Tax Claims and Fee Claims have not been classified and are excluded from the Classes set forth in Article III of the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.

2.3.    **Bar Date for Administrative Claims.**    Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims (except for Fee Claims) must be Filed and served on the Debtors and their counsel, no later than thirty (30) days after the Effective Date (the **"Administrative Claims Bar Date"**). Any Person that is required to File and serve a request for payment of an Administrative Claim and fails to timely File and serve such request, shall be forever barred, estopped and enjoined from asserting such Claim or participating in distributions under this Plan on account thereof. Objections to requests for payment of Administrative Claims (except for Fee Claims) must be Filed and served on the Debtors and their counsel, and the party requesting payment of an Administrative Claim within thirty (30) days after the Filing of such request for payment. All post-Petition Date ordinary course Administrative Claims shall be paid in the ordinary course during the Chapter 11 Cases.

2.4.    **Bar Date for Fee Claims.**  Unless otherwise ordered by the Bankruptcy Court, requests for payment of Fee Claims incurred through the Effective Date must be Filed and served on the Debtors and their counsel no later than twenty (20) days after the Effective Date (the **"Fee Claim Bar Date"**).

2.5.    **Classification of Claims and Equity Interests.**  The following is the designation of the Classes of Claims and Equity Interests under the Plan:

Class 1 Claims shall consist of all Other Priority Claims.

Class 2 Claims shall consist of the Mortgage Lender Claim.

Class 3 Claims shall consist of the Mezzanine Lender Claim.

Class 4 Claims shall consist of all General Unsecured Claims.

Class 5 Equity Interests shall consist of Equity Interests.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS

3.1.    **Administrative Claims.**    Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Administrative Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Administrative Claim, or upon such other terms as may be agreed to by the holder of such Allowed Administrative Claim, or (b) such lesser amount as the holder of such Allowed Administrative Claim, the Debtors and Mezzanine Lender might otherwise agree. Notwithstanding the foregoing, the Statutory Fees shall be paid in Cash as soon as practicable after the Effective Date.

3.2.    **Priority Tax Claims.**    Except as provided herein, each holder of an Allowed Priority Tax Claim shall be paid in respect of such Allowed Priority Tax Claim the full amount thereof, without post-Petition Date interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim or upon such other terms as may be agreed upon by the holder of such Allowed Priority Tax Claim, the Debtors and Mezzanine Lender.

3.3.    **Fee Claims.**    Each holder of an Allowed Fee Claim shall receive 100% of the unpaid amount of such Allowed Fee Claim in Cash after such Fee Claim becomes an Allowed Claim.

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
## AND EQUITY INTERESTS

The categories of Claims and Equity Interests listed below classify Claims against, and Equity Interests in, the Debtors for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

23327496v.2

4.1.    **Class 1 Other Priority Claims.**  Each holder of an Allowed Other Priority Claim shall be paid in respect of such Allowed Other Priority Claim (a) the full amount thereof in Cash, as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Other Priority Claim, or upon such other terms as may be agreed upon by the holder of such Allowed Other Priority Claim, the Debtors and the Mezzanine Acquisition Entity or (b) such lesser amount as the holder of such Allowed Other Priority Claim, the Debtors and the Mezzanine Acquisition Entity might otherwise agree.  The holders of Claims in this Class 1 are not Impaired and, therefore, not entitled to vote and conclusively presumed to accept this Plan.

4.2.    **Class 2 Mortgage Lender Claim.**  Mortgage Lender shall have an Allowed Secured Claim in an amount equal to the Mortgage Loan Amount in respect of the Mortgage Loan (the **"Mortgage Lender Allowed Secured Claim"**).  On the Effective Date, in full and complete satisfaction of Mortgage Lender Allowed Secured Claim, the Mezzanine Acquisition Entity shall make a payment in Cash to Mortgage Lender in the amount of the Mortgage Loan Amount, in full satisfaction of the Mortgage Loan.

4.3.    **Class 3 Mezzanine Lender Claim.**  Mezzanine Lender shall have an Allowed Secured Claim in the amount of the appraised value of the Property less the Mortgage Loan Amount (which amount shall be approximately $30,440,916.60 as of October 4, 2013) (the "**Mezzanine Lender Claim**").  On the Effective Date, the Debtors shall transfer and convey (the **"Property Transfer"**) to the Mezzanine Acquisition Entity the Property, without representation or warranty and without recourse to the Debtors, free and clear of all Claims, Liens, charges, interests and encumbrances other than the Mezzanine Loan, and any other Liens, charges, interest and/or encumbrances other than the Mezzanine Loan pursuant to section 363 of the Bankruptcy Code, subject to all violations, ECB liens and exceptions to and defects in title as revealed in an accurate title report issued as of the Effective Date; provided, however, that the Debtors shall retain, and not transfer to the Mezzanine Acquisition Entity on the Effective Date (i) Cash needed to make other payments on the Effective Date pursuant to the terms of this Plan; (ii) the Administrative Claims Reserve; (iii) the Class 4 Disputed Claims Reserve; and (iv) sufficient Cash reserve to pay Statutory Fees and any other cost of liquidating the Estates; provided, further, that following resolution and payment of the Claims provided for by (x) the Administrative Claims Reserve, the Debtors, in accordance with section 7.4 of this Plan, shall transfer promptly to the Mezzanine Acquisition Entity any balance remaining in the Administrative Claims Reserve and (y) the Class 4 Disputed Claims Reserve, the Debtors, in accordance with section 7.5 of this Plan, shall transfer promptly to the Mezzanine Acquisition Entity any balance remaining in the Class 4 Disputed Claims Reserve.  The balance of the Mezzanine Lender Claim in the amount of approximately $26,581,484.12 plus interest, costs, fees, penalties and expenses (the **"Mezzanine Lender Allowed Deficiency Claim"**), solely in connection with the Confirmation and Effective Date of this Plan, shall be deemed waived and extinguished on the Effective Date.  Further, to the extent Mezzanine Lender provides the Debtors with postpetition funding of the Debtors' operations consistent with the Cash Collateral Order, any related Claim shall be afforded unsecured administrative status.  Any postpetition unsecured administrative claim held by Mezzanine Lender shall be deemed waived and extinguished on the Effective Date.  Further, on the Effective Date, the Transfer Documents, which were delivered to the Mezzanine Lender and held in escrow pursuant to the terms of the PSA, shall be recorded by the Mezzanine Lender or the Mezzanine Acquisition Entity, pursuant

14

to the terms of the PSA.  Mezzanine Lender is Impaired and, therefore, is entitled to vote to accept or reject this Plan.  Nothing contained in this section 4.3 or elsewhere in this Plan shall have the effect or be deemed to have the effect of discharging or terminating the Mezzanine Loan; provided, however, upon the occurrence of the transfer of the Property, any and all obligations and liabilities of the Debtors and the Released Parties, including, without limitation, the Guarantors under the Mezzanine Loan shall be deemed waived, extinguished and discharged.

4.4.    **Class 4 General Unsecured Claims.**    This Class shall consist of General Unsecured Claims other than the Mezzanine Lender Allowed Deficiency Claim against the Debtors.  Each holder of an Allowed General Unsecured Claim shall be paid in respect of such Allowed General Unsecured Claim the full amount thereof in Cash on the Effective Date or as soon as practicable thereafter, which amount shall include post-Petition Date interest pursuant to any applicable contract rate or, if there is no applicable contract rate, the applicable federal rate.  The holders of Claims in this Class are Unimpaired and, therefore, are not entitled to vote and conclusively presumed to accept this Plan.

4.5.    **Class 5 Equity Interests.**    This Class shall consist of all Equity Interests.  On the Effective Date, Mezzanine Lender shall transfer to the Debtors for the benefit of holders of Equity Interests $5,000,000.00, without set-offs or offset for any Claims or deductions not specifically contemplated under the PSA, payable to Gerstein Strauss & Rinaldi, Esqs (the **"Equity Interest Payment"**).  IOLA account for distribution to holders of Equity Interests, and Class 5 Equity Interests shall be deemed cancelled, null and void and of no force and effect.  Further, to the extent holders of Equity Interests provide the Debtors with postpetition credit to fund the Debtors' legal fees and expenses consistent with the Cash Collateral Order, any related Claim shall be afforded unsecured administrative status.    Any postpetition unsecured administrative claim held by a holder of Equity Interest shall be deemed waived and extinguished on the Effective Date.  Accordingly, holders of Equity Interests are Impaired and, therefore, are entitled to vote to accept or reject this Plan.

4.6.    **Reservation of Rights.**    Nothing contained herein shall be deemed to limit the right of the Debtors, Mortgage Lender, Mezzanine Lender, the Mezzanine Acquisition Entity or the United States Trustee to object to any Administrative Claims (including without limitation Fee Claims and Cure Amounts), Priority Claims, Other Priority Claims, General Unsecured Claims (including without limitation Claims for rejection damages under section 365 of the Bankruptcy Code) and Secured Claims Filed in these Chapter 11 Cases other than Mortgage Lender Claim and the Mezzanine Lender Allowed Secured Claim, which are deemed Allowed and not subject to objection.  Nothing contained herein shall affect the Debtors' rights and defenses both legal and equitable, with respect to all members of any Unimpaired Classes, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments asserted against members of any Unimpaired Classes subject to the releases granted herein.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

15

5.1.    **Implementation on the Effective Date.**  This Plan shall be implemented by the CRO and/or Newmark & Company Real Estate d/b/a Newmark Grubb Knight Frank (the "**Manager**") in a manner consistent with the terms and conditions set forth in this Plan and the Confirmation Order.

5.2.    **Funding for this Plan.**  This Plan shall be funded by the Debtors' assets.  To the extent the Debtors lack sufficient funds for the payments and distributions contemplated hereby, the Mezzanine Lender or the Mezzanine Acquisition Entity shall fund the Plan.  The Mezzanine Lender or the Mezzanine Acquisition Entity shall transfer all necessary funds to the Debtors' "DIP Account" established pursuant to the Cash Collateral Order.  The distributions described in Article VII below shall be effectuated by the CRO and/or the Manager.

5.3.    **Vesting of Assets in the Debtors.**  As of the Effective Date, pursuant to the provisions of section 1141(b) and (c) of the Bankruptcy Code, Mezzanine Borrower's assets shall vest in Mezzanine Borrower free and clear of all Claims, liens, encumbrances, charges, membership interests and other interests, except as otherwise expressly provided herein or in the Confirmation Order.   Likewise, on the Effective Date, pursuant to the provisions of section 1141(b) and (c) of the Bankruptcy Code, Fee Owner's assets shall vest in Fee Owner free and clear of all Claims, liens, encumbrances, charges, membership interests and other interests, except as otherwise expressly provided herein or in the Confirmation Order.   Further, on the Effective Date, pursuant to the provisions of section 1141(b) and (c) of the Bankruptcy Code, Leasehold Owner's assets shall vest in Leasehold Owner free and clear of all Claims, liens, encumbrances, charges, membership interests and other interests, except as otherwise expressly provided herein or in the Confirmation Order.

5.4.    **Continuing Existence.**  From and after the Effective Date, the Debtors shall continue in existence for the purposes of (i) winding up their affairs as expeditiously as reasonably possible, (ii) in consultation with the Mezzanine Acquisition Entity, resolving Disputed Claims, (iii) administering this Plan, (iv) filing appropriate tax returns and (v) performing all such other acts and conditions required by and consistent with consummation of the terms of this Plan.

5.5.    **Closing or Dismissal of the Chapter 11 Cases.**  When all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed, and all distributions contemplated herein have been effectuated, or at such earlier time as the CRO deems appropriate, the CRO shall seek authority from the Bankruptcy Court to close or dismiss the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.  In the event of the dismissal of the Chapter 11 Cases, notwithstanding the provisions of section 349(b)(2) of the Bankruptcy Code, all orders of the Court shall remain in effect.

5.6.    **Corporate Action.**  Upon the entry of the Confirmation Order, all matters provided under this Plan involving the corporate structure of the Debtors shall be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders and/or members, or the Debtors' boards of directors, managers and/or managing members.  As soon as practicable following the Effective Date, the Debtors shall dissolve or otherwise terminate their existence, by filing a certificate of dissolution and a copy of the Confirmation Order and any other necessary documents with the applicable state authority.

16

## ARTICLE VI

## RELEASES

6.1.  **Releases.**  (a)  **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, for good and valuable consideration provided by each of the Released Parties, on the Effective Date and effective as of the Effective Date, the Released Parties are deemed released and discharged by each of the Debtors' and their Estates from any and all obligations, liabilities, claims, counterclaims, crossclaims, offsets, demands, and causes of action, whether known or unknown, direct or derivative, contingent or absolute, that any of the Debtors would have been legally entitled to assert, or, now or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of time to the date of this Plan including, but not limited to, any claim or cause of action arising from or relating to the Debtors, the Chapter 11 Cases, this Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest of the Released Parties that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation, formulation or preparation of this Plan and the Disclosure Statement, or upon any other act or omission, transaction, agreement, event or other occurrence taking place, in each case to the extent incurred on or prior to the Effective Date, other than (i) in each case claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence; and (ii) liability of any released person for any debt owed to the United States Government, any state, city or municipality arising under (w) the Internal Revenue Code or any state, city or municipal tax code, (x) the environmental laws  of the United States or any state, city or municipality or (y) laws regarding the regulation of securities administered by the Securities and Exchange Commission and (z) any criminal laws of the United States, any state, city or municipality. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to Article VI of the Plan.**

(b)  **On the Effective Date:  (i) the Borrower Parties shall execute and deliver a release in favor of Mortgage Lender, C-III, and Wells Fargo substantially in the form of Exhibit A-1 to the PSA; (ii) the Borrower Parties shall execute and deliver a release in favor of Mezzanine Lender substantially in the form of Exhibit A-2 to the PSA; (iii) the Borrower Parties shall execute and deliver a release in favor of the CRO substantially in the form of Exhibit A-3 to the PSA; (iv) Mortgage Lender, C-III shall execute and deliver a release in favor of the Borrower Parties substantially in the form of Exhibit A-4 to the PSA; (v) Mezzanine Lender shall execute and deliver a release in favor of the Borrower Parties substantially in the form of Exhibit A-5 to the PSA; (vi) Mortgage Lender shall execute and deliver a release in favor of Mezzanine Lender substantially in the form of Exhibit A-6 to the PSA; (vii) Mezzanine Lender shall execute and deliver a release in favor of Mortgage Lender, C-III and Wells Fargo substantially in the form of Exhibit A-7 to the PSA; and (viii) each of the Debtors and the Released Parties shall be deemed released by all holders of Claims or Equity Interests, of and from any claims, obligations, rights, causes of action and liabilities for any act or omission occurring through the date immediately preceding the Effective Date that arise from, or are related to, the Property and the**

17

ownership thereof, the Mortgage Loan, the Mezzanine Loan and the Intercreditor Agreement; provided, however, for the avoidance of doubt, the releases provided in this section 6.1 (b) shall not affect any right granted to or obligation imposed upon either Mortgage Lender or Mezzanine Lender pursuant to the Intercreditor Agreement from and after the Effective Date. The releases to be granted in favor of the Borrower Parties (clauses (iv) and (v) of this section 6.1(b)) shall be (x) subject to and only become effective upon the performance of the Borrower Parties under the PSA and (y) a material condition to the release of the Transfer Documents from escrow pursuant to the PSA. Further, the releases to be granted in favor of Mortgage Lender (clauses (i) and (vii) of this section 6.1(b)) shall be a condition to Mortgage Lender's obligations to convey the Mortgage Loan pursuant to the terms of this Plan.

6.2.    **Injunctions.** The following provisions shall apply and shall be fully set forth in the Confirmation Order:

**Injunction Against Debtors.** On the Effective Date, the Debtors shall be permanently enjoined from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind, including asserting any setoff, right of subrogation, contribution, indemnification or recoupment of any kind, directly or indirectly, or proceeding in any manner in any place inconsistent with the releases granted by the Debtors and their Estates to the Released Parties pursuant to this Plan or pursuant to the releases described in section 6.1(b) hereof. The Confirmation Order shall specifically provide for such injunction.

**Injunctions Against Interference with Consummation or Implementation of Plan.** All holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtors, their Estates, with the intent or effect of interfering with the consummation and implementation of this Plan and the transfers, payments and distributions to be made hereunder.

**Plan Injunction.** Except as otherwise specifically provided for by this Plan, as and from the Effective Date, all Persons shall be enjoined from (i) the commencement or continuation of any action, employment of process, or act to collect, offset, or recover any Claim or cause of action (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (iii) the creation, perfection or enforcement of any encumbrance of any kind; and/or (iv) the assertion of any right of setoff, counterclaim, exculpation, subrogation or recoupment of any kind, in each case against the Debtors or the Estates, to the fullest extent authorized or provided by the Bankruptcy Code.

**Confirmation Injunction.** Except as otherwise provided herein, and as set forth in the Confirmation Order, (a) the rights afforded herein and the treatment of all Claims and Equity Interests herein, shall be in exchange for and in complete satisfaction and release of, all Claims and Equity Interests of any

nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtors or any of their assets and properties, (b) on the Effective Date, all such Claims against the Debtors and Equity Interests shall be satisfied and released in full, and (c) all Persons shall be precluded from asserting and shall be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) against the Debtors, their  assets or properties, or any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

The releases and injunctions granted pursuant to this Article VI and section 11.7 below in favor of the Released Parties are mutual inducements to the Released Parties and are integral parts of this Plan and are necessary to confirm the Plan.

## ARTICLE VII

## DISTRIBUTIONS UNDER THE PLAN.

7.1.    **Distributions for Claims Allowed as of the Effective Date.**  Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable.  Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable.  Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  The Debtors shall make all distributions required to be made under the Plan except as otherwise specifically provided herein.

7.2.    **Waiver of Certain Insider Claims.**  No distribution shall be made to Gerstein Strauss & Rinaldi, LLP ("**Gerstein**") on account of its General Unsecured Claim in the amount of $11,515.00 pursuant to agreement of the Debtors, the Mezzanine Lender and Gerstein.  Nor shall any distribution be made to SL Realty Services, LLC ("**SL Realty**") on account of its General Unsecured Claim in the amount of $586,783.26 pursuant to an agreement of the Debtors, the Mezzanine Lender and SL Realty.

7.3.    **Delivery of Distributions.**  Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address set forth on the Schedules Filed with the Bankruptcy Court or on the books and records of the Debtors or their agent, unless the Debtors have been notified in writing of a change of address, including by the Filing of a proof of Claim or Administrative Claim request that contains an address for a holder of a Claim different from the address for such holder reflected on any Schedule.

7.4.    **Reserves for Administrative, Priority Tax and Other Priority Claims.**  On or before the Effective Date, the Debtors shall establish and maintain a reserve in an amount equal to the sum of (i) all Disputed Administrative Claims, Disputed Cure Amounts, Disputed Priority Tax Claims and Disputed Other Priority Claims, if any, in an amount equal to what would be distributed to holders of Disputed Administrative Claims, Disputed Priority Tax Claims,

19

Disputed Other Priority Claims, and Disputed Cure Amounts if their Disputed Claims had been deemed Allowed Claims on the Effective Date or on the Administrative Claims Bar Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Debtors and/or the Mezzanine Acquisition Entity and (ii) an estimated amount for unpaid Fee Claims and any other Administrative Claims that have not been Filed as of the Effective Date, such amount to be agreed upon by the Debtors and the Mezzanine Acquisition Entity or such other amount as may be fixed by the Bankruptcy Court (together, the **"Administrative Claims Reserve"**).  With respect to such Disputed Claims, if, when and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefor shall be distributed by the Debtors to the claimant in a manner consistent with distributions to similarly situated Allowed Claims.  The balance of such Cash, if any, remaining after all Fee Claims, Disputed Administrative Claims, Disputed Cure Amounts, Disputed Priority Tax Claims and Disputed Other Priority Claims have been resolved and distributions made in accordance with the Plan, shall be released and distributed promptly to the Mezzanine Acquisition Entity (and not to the Debtors); provided the Mortgage Loan Amount is paid in full to Mortgage Lender prior thereto.  No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order or agreement of the parties (including the Mezzanine Acquisition Entity). In the event the Debtors lack sufficient Cash to make the payments contemplated by this Plan, Mezzanine Lender or the Mezzanine Acquisition Entity shall fund any shortfall, and Mortgage Lender and the Borrower Parties shall have no obligation therefor.

7.5.    **Reserves for Disputed Claims.**    On or before the Effective Date, the CRO shall establish and maintain a reserve (**"Class 4 Disputed Claims Reserve"**) for all Class 4 Disputed Claims, including any Disputed Rejection Damage Claims.    For purposes of establishing a reserve for Class 4 Disputed Claims, Cash will be set aside in an amount equal to the amount that would have been distributed to the holders of Class 4 Disputed Claims had their Class 4 Disputed Claims been deemed Allowed Claims on the Effective Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Debtors and/or Mezzanine Lender or the Mezzanine Acquisition Entity.  With respect to such Class 4 Disputed Claims, if, when and to the extent any such Class 4 Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefor shall be distributed by the Debtors to the Claimant on the first business day following the end of the calendar quarter in which the Class 4 Disputed Claim becomes an Allowed Claim (or earlier in the discretion of the Debtors or the Mezzanine Acquisition Entity) and in a manner thereafter consistent with distributions to similarly situated Allowed Claims.  The balance of such Cash, if any, remaining in the Class 4 Disputed Claim Reserve after all Class 4 Disputed Claims have been resolved and distributions made in accordance with the Plan, shall be released and distributed promptly to the Mezzanine Acquisition Entity (and not to the Debtors); provided the Mortgage Loan Amount is paid in full to Mortgage Lender prior thereto.  No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order or agreement of the parties (including the Mezzanine Acquisition Entity).  No payments or distributions shall be made with respect to post-Petition Date interest accruing on any Claim other than Mortgage Lender Claim. Mezzanine Acquisition Entity shall be responsible for, and will litigate to judgment or otherwise resolve any Disputed Claims, and shall indemnify each of the Borrower Parties for any liability arising from such Disputed Claims.

7.6.    **Claims Objection Deadline.**    Objections to Claims shall be Filed and served upon each affected Creditor by the Debtors and/or the Mezzanine Acquisition Entity no later than thirty (30) days after the later of (i) the Confirmation Date ("**Objection Deadline**") and (ii) the date the Claim is timely Filed; provided, however, that the Objection Deadline may be extended by the Bankruptcy Court upon motion of the Debtors with the consent of the Mezzanine Acquisition Entity, without notice or hearing, for up to an additional sixty (60) days thereafter.  The Objection Deadline shall automatically be extended without further order of the Bankruptcy Court during the time period following the Filing of the extension motion until such time as the Bankruptcy Court enters an order granting or denying the requested extension.

7.7.    **Settlement of Disputed Claims.**    Objections to Claims may be litigated to judgment, withdrawn, or settled with the approval of the Bankruptcy Court, at Mezzanine Lender's expense, except to the extent such approval is not necessary as provided in this section 7.7.  After the Effective Date, and subject to the terms of this Plan, the Debtors may settle any Disputed Claim without providing any notice or obtaining an order from the Bankruptcy Court provided, however, that the Mezzanine Acquisition Entity consents in writing to such settlement.

7.8.    **Unclaimed Property.**    If any distribution remains unclaimed for a period of one hundred and eighty (180) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder of an Allowed Claim or Equity Interest entitled thereto, such unclaimed property shall be forfeited by such holder, whereupon all right, title and interest in and to the unclaimed property shall be held in reserve by the Debtors to be distributed to the Mezzanine Acquisition Entity.

7.9.    **Release of Liens.**    The Liens securing the Mortgage Loan and the Mezzanine Loan shall survive Confirmation and the Effective Date and shall remain valid, enforceable and perfected Liens against the Property.  On the Effective Date and except as expressly set forth in this Plan, all other mortgages, deeds of trust, Liens or other security interests against the Real Property of the Debtors' Estates, shall be released and forever discharged, and all right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests shall revert to the Mezzanine Acquisition Entity and its successors and assigns.

7.10.    **Fractional Cents.**    Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made.  Whenever any payment of a fraction of a cent would otherwise be payable by the Debtors, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

7.11.    **Payments of Less than Twenty-Five Dollars.**    If a Cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than twenty-five dollars ($25.00) (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Debtors shall not be required to make such payment.

## ARTICLE VIII

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

8.1.  **Assumption of All Agreements.**  Any and all prepetition unexpired Leases or executory contracts (not otherwise previously rejected or the subject of a motion to reject pending on the Confirmation Date), including, but not limited to, all collective bargaining agreements, shall be deemed assumed by the Debtors and assigned to the Mezzanine Acquisition Entity effective as of the Effective Date.  Without limiting the foregoing, on the Effective Date, all Leases of non-residential property with tenants shall be deemed assumed by the Debtors and assigned to the Mezzanine Acquisition Entity, and all Security Deposits as well as the letters of credit shall be transferred to the Mezzanine Acquisition Entity in accordance with the terms of this Plan, and the Mezzanine Acquisition Entity shall transfer $280,100.92 to the Guarantors in consideration of the transfer of such cash Security Deposits, and the Mezzanine Acquisition Entity shall maintain custody and control of all Security Deposits and letters of credit, if any, posted by tenants in accordance with the terms of their Leases and applicable non-bankruptcy law; provided, however, the transfer of any Security Deposits to the Mezzanine Acquisition Entity are subject to (i) payment of the Mortgage Loan Amount to the Mortgage Lender in full and (ii) Mortgage Lender's rights pursuant to the Mortgage Loan Documents and the Intercreditor Agreement. Upon assignment of any executory contract or unexpired lease, the Mezzanine Acquisition Entity shall assume all obligations under such executory contract or unexpired lease, including, but not limited to, return of security deposits and any tenant allowances (for build-outs, repairs or otherwise), whether such obligations arose prior to or subsequent to such assignment.   Any rent arrears owing to the Debtors shall be assigned to Mezzanine Acquisition Entity, without representation.   For the avoidance of doubt, all collective bargaining agreements, including but not limited to that with 32BJ, shall be assumed and assigned to the Mezzanine Acquisition Entity.  The Mezzanine Acquisition Entity shall continue to contribute to the pension consistent with past practices.

8.2.  **Claims for Damages.**  All proofs of Claim with respect to Claims arising from the rejection of executory contracts or Leases, if any, shall, unless another order of the Bankruptcy Court provides for an earlier date, be Filed with the Bankruptcy Court within thirty (30) days after the mailing of notice of the Effective Date; provided, however, proofs of Claim with respect to any Claim arising from the rejection of an executory contract that is designated for rejection by the Mezzanine Acquisition Entity following the entry of an order of the Bankruptcy Court fixing the disputed cure amount for such contract shall be filed within five (5) days after the entry of an order of the Bankruptcy Court approving the rejection of such executory contract.   Any and all proofs of Claim with respect to Claims arising from the rejection of executory contracts by the Debtors shall be treated as Class 4 General Unsecured Claims, for purposes of distribution pursuant to the Plan.  Unless otherwise permitted by Final Order, any proof of Claim that is not Filed before the Bar Date (other than those Claims arising from the rejection of executory contracts or Leases under the Plan, as set forth above) shall automatically be disallowed as a late-filed Claim, without any action by the Debtors, and the holder of such Claim shall be forever barred from asserting such Claim against the Debtors, their Estates or property of their Estates.

# ARTICLE IX

# CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

9.1.  **Conditions to Confirmation of the Plan.**  This Plan shall not be confirmed unless and until the following conditions have been satisfied in full or waived by Mortgage Lender, the Debtors, Mezzanine Lender and the Mezzanine Acquisition Entity:

The Plan shall be (i) substantially in the form attached to the PSA and (ii) in form and substance acceptable to Mortgage Lender, Mezzanine Lender, the Mezzanine Acquisition Entity and the Debtors;

The Confirmation Order shall (i) be substantially in the form attached to the PSA, (ii) be in form and substance acceptable to Mortgage Lender, Mezzanine Lender, the Mezzanine Acquisition Entity and the Debtors, and (iii) approve all provisions, terms and conditions of the Plan; and

No amendments, modifications, supplements or alterations shall have been made to this Plan, or any document delivered in connection therewith, without the express written consent of Mortgage Lender, Mezzanine Lender, the Mezzanine Acquisition Entity and the Debtors, which consent may be granted, withheld or conditioned by each in its respective sole and absolute discretion.

9.2.  **Conditions to Effectiveness of the Plan.**  This Plan shall not become effective unless and until (i) the Bankruptcy Court shall have entered the Confirmation Order by the date which is four months from Petition Date (the "**Confirmation Order Deadline**") (or such other date as agreed to by Debtors, Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity; provided, however, for the avoidance of doubt, upon the occurrence of any Authority Litigation, the Confirmation Order Deadline shall be extended by thirty (30) days so long as the Opposition is being diligently pursued, the same shall be in full force and effect and not be subject to any stay or injunction and such Confirmation Order shall be in form and substance satisfactory to the Debtors, Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity); and (ii) the date that is not earlier than fourteen (14) Business Days following the entry of the Confirmation Order and the expiration of all appeal periods to such order without the Filing of an appeal and no stay of the Confirmation Order is in effect.

9.3.  **Effect of Failure of Condition.**  In the event that the conditions specified in section 9.2 of this Plan have not occurred on or before thirty (30) days after the Confirmation Date, the Confirmation Order shall be vacated upon entry of an order of the Bankruptcy Court pursuant to a motion Filed by the Mezzanine Acquisition Entity.

9.4.  **Notice of the Effective Date; Actions Taken on Effective Date.**  The Debtors shall File a notice of the occurrence of the Effective Date within five (5) Business Days thereafter.  Unless otherwise specifically provided in this Plan, any action required to be taken by the Debtors on the Effective Date may be taken by the Debtors on the Effective Date or as soon as reasonably practicable thereafter.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1.  **Jurisdiction.**  Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Debtors, as the case may be, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

Claims.  To determine the allowance, extent, classification or priority of Claims against the Debtors upon objection by the Debtors or the Mezzanine Acquisition Entity;

Injunction, etc.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Person or Entity;

Professional Fees.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, and objections thereto, as provided for in this Plan;

Certain Priority Claims.  To determine the allowance, extent and classification of any Priority Tax Claims, Other Priority Claims, Administrative Claims or any request for payment of an Administrative Claim;

Dispute Resolution.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and/or Confirmation Order and the making of distributions hereunder and thereunder;

Executory Contracts and Unexpired Leases.  To determine any and all motions for the rejection, assumption or assignment of executory contracts or unexpired Leases, and to determine the allowance and extent of any Claims resulting from the rejection of executory contracts and unexpired Leases;

Actions.  To determine all applications, motions, adversary proceedings, contested matters, actions and any other litigated matters instituted (either before or after the Effective Date) in the Chapter 11 Cases by or on behalf of the Debtors;

General Matters.  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code or other applicable law;

Plan Modification.  To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

Aid Consummation.  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person or Entity, to the full extent authorized by the Bankruptcy Code;

Protect Property.  To protect the Property of the Debtors from adverse Claims or Liens or interference inconsistent with this Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of this Plan;

Abandonment of Property.  To hear and determine matters pertaining to abandonment of property of the Estates;

Implementation of Confirmation Order.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; and

Final Order.  To enter a final order closing the Chapter 11 Cases.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1.  **Pre-Confirmation Modification.**  On notice to, and opportunity to be heard by, the Bankruptcy Court, this Plan may be altered, amended or modified by the Debtors before the Confirmation Date as provided in section 1127 of the Bankruptcy Code; provided, however, that any such amendment or modification of the Plan must be approved in writing by Mezzanine Lender, the Mezzanine Acquisition Entity and Mortgage Lender in their respective sole and absolute discretion.

11.2.  **Post-Confirmation Immaterial Modification.**  With the approval of the Bankruptcy Court and on notice to and an opportunity to be heard by the United States Trustee and without notice to holders of Claims and Equity Interests, the Debtors may, insofar as it does not materially and adversely affect the interest of holders of Claims and Equity Interests, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan; provided, however, that any such amendment or modification of the Plan must be approved in writing by Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity in their respective sole and absolute discretion.

11.3.  **Post-Confirmation Material Modification.**  On notice to, and an opportunity to be heard by, the Bankruptcy Court, the Plan may be altered or amended after the Confirmation Date by the Debtors in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, provided that such alteration or modification is made after a hearing and otherwise meets the requirements of section 1127 of the Bankruptcy Code; provided, however, that any such amendment or modification of the Plan must be approved in writing by Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity in their respective sole and absolute discretion.

11.4.  **Withdrawal or Revocation of the Plan.**  The Debtors, in consultation with Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity, reserve the right

23327496v.2

prior to the Effective Date to revoke or withdraw the Plan; provided, however, if the Plan has not become effective by the earlier of (five months following the Petition Date), or within twenty (20) days after the entering of an order approving this Plan (the "**Effective Date Deadline**") (or such other date as agreed to by Debtors, Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity; provided, however, for the avoidance of doubt, upon the occurrence of any Authority Litigation, the Effective Date Deadline shall be extended by thirty (30) days so long as the Opposition is being diligently pursued), each of the Debtors shall, unless otherwise agreed by the Debtors, Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity in their respective sole and absolute discretion, cause their respective affiliates and agents to use good faith, diligence and commercially reasonable efforts to withdraw the Plan and seek dismissal of the Chapter 11 Cases, without prejudice to the rights and defenses of the Debtors, Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity.  If the Debtors revoke or withdraw the Plan or if confirmation or consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the allowance, fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests) and any assumption or rejection of executory contracts or Leases affected by the Plan shall terminate and be of no further force or effect, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights or defenses of Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.  For the avoidance of doubt, if the Debtors withdraw the Plan or seek dismissal of the Chapter 11 Cases, Mortgage Lender may, at its option and election, pursue any and all rights and remedies available to Mortgage Lender pursuant to the Mortgage Loan Documents, applicable law or otherwise, subject to the Debtors' defenses.

11.5.   **Payment of Statutory Fees.**   All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date (if due) by the Debtors. The Debtors shall pay when due all United States Trustee quarterly fees under 28 U.S.C. section 1930(a)(6), plus interest, if any, due under 31 U.S.C. section 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a final decree closing the Chapter 11 Cases, dismissal of the Chapter 11 Cases, or conversion of the Chapter 11 Cases to cases under chapter 7.

11.6.   **Successors and Assigns.**   The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person or Entity.

11.7.   **Exculpation.**   On the Effective Date, the Debtors and each of the Released Parties shall not be liable for any act or omission occurring during or relating to the Chapter 11 Cases, commencement of the Chapter 11 Cases, the solicitation of acceptances of this Plan, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct or gross negligence, and all such Persons, in all respects, shall be entitled to rely

upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.

11.8.   **Comprehensive Settlement of Claims and Controversies.**   Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Allowed Equity Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Equity Interest.  The entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or causes of action of (a) the Debtors and their Estates, including, without limitation, any Person or Entity seeking to exercise a right in a derivative capacity on behalf of the Estates, and (b) the Released Parties and (ii) the Bankruptcy Court's finding that such compromise or settlement (a) is in the best interests of the Debtors, their Estates, their property and holders of Claims and Equity Interests and (b) is fair, equitable and reasonable.  For the avoidance of doubt, the compromise and settlement of all claims and causes of action of the Debtors and their Estates as set forth herein shall include any potential avoidance actions accruing to the Debtors or their Estates, which shall not be pursued.

11.9.   **Preservation of Insurance.**   This Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtors (including, without limitation, their direct or indirect members, managers or officers) or any other person or entity.  Likewise, the Plan and Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtors or the carriers.

11.10.   **Cramdown.**   The Debtors reserve the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to Classes that vote to reject the Plan.

11.11.   **Governing Law.**   Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

11.12.   **Notices.**   Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

If to Debtors:

> c/o LIC Crown Mezz Borrower
> 45 Adams Road
> Easton, Connecticut 06612
> Attention:  Steven A. Carlson
> Tel: (203) 268-7405
> Fax:  (203) 268-7405

With a copy to:

    c/o Klestadt & Winters, LLP
    570 Seventh Avenue, 17th Floor
    New York, New York 10018
    Tel:  (212) 972- 3000
    Fax: (212) 972-2245
    Attention:   Tracy Klestadt, Esq.
               Joseph Corneau, Esq.

and to:

    Mark Karasick
    601 West 26th Street, Suite 1260
    New York, New York 10001

If to Mortgage Lender:    U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, successor by merger to LaSalle Bank National Association for the registered holders of J. P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC15, Commercial Mortgage Pass-Through Certificates, Series 2006-CIBC15
    c/o C-III Asset Management LLC
    5221 North O'Connor Boulevard, Suite 600
    Irving, Texas 75039
    Attention: John Chilson
    Tel: 860-673-9145
    Fax: 972-868-5490

With a copy to:

    Weil, Gotshal & Manges LLP
    767 Fifth Avenue
    New York, New York 10153
    Attention: W. Michael Bond, Esq.
    Tel:  (212) 310-8000
    Fax: (212) 310-8007

    -and-

    Weil, Gotshal & Manges LLP
    700 Louisiana, Suite 1600
    Houston, Texas 77002
    Attention: Alfredo R. Pérez, Esq.
    Tel: (713) 536-5000
    Fax: (713) 224-9511

If to Mezzanine Lender or Mezzanine Acquisition Entity:

> Mezzanine Lender Capital Group, LLC
> 505 Fifth Avenue, 28th Floor
> New York, New York 10017
> Tel: (212) 554-2260
> Fax: (212) 554-2263
> Attention: Andrew B. Cohen

> With a copy to:
> Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
> 666 Third Avenue
> New York, New York 10017
> Attention:   John H. Bae, Esq.
>                   Kaitlin R. Walsh, Esq.
> Tel: 212-935-3000
> Fax: 212-983-3115

11.13. **Saturday, Sunday or Legal Holiday.**  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

11.14. **Exemption From Transfer Taxes.**  Pursuant to Bankruptcy Code section 1146(a):  (a) the issuance, transfer or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any contract, lease or sublease; (d) the making or delivery of any deed or other instrument of transfer or other consideration under, in the furtherance of, or in connection with this Plan, including, without limitation, the delivery of the Property to the Mezzanine Acquisition Entity and any other payments and transfers pursuant to the Plan by any Debtor(s) to the Mezzanine Acquisition Entity; or (e) delivery of deeds, bills of sale or other transfers of tangible property will not be subject to any stamp tax, or other similar tax or any tax held to be a stamp tax or other similar tax under applicable law.

11.15. **Severability.**  If any term or provision of the Plan is held by the Bankruptcy Court prior to, or at the time of, Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  In the event of any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan may, at the option of Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity in their respective sole and absolute discretion, remain in full force and effect and not be deemed affected. However, Mortgage Lender, Mezzanine Lender and the Mezzanine Acquisition Entity reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term

and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.16.  **Headings.**  The headings used in this Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

DATED:  October 7, 2013

<div style="margin-left:40%">

**LIC CROWN MEZZ BORROWER LLC,**
**A Delaware Liability Company**

By:_____*/s/ Steven A. Carlson*_____
    Name: Steven A. Carlson
        Chief Restructuring Officer


**LIC CROWN LEASEHOLD OWNER LLC,**
**A Delaware Liability Company**

By:_____*/s/ Steven A. Carlson*_____
    Name: Steven A. Carlson
        Chief Restructuring Officer


**LIC CROWN FEE OWNER LLC,**
**A Delaware Liability Company**

By:_____*/s/ Steven A. Carlson*_____
    Name: Steven A. Carlson
        Chief Restructuring Officer

</div>

23327496v.2

## EXHIBIT A

### Mortgage Loan Documents

1.      Amended, Restated and Consolidated Promissory Note in the principal amount of $77,000,000.00, dated May 31, 2006, by LIC Crown Fee Owner LLC ("Fee Owner") and LIC Crown Leasehold Owner ("Leasehold Owner", and collectively with Fee Owner, the "Borrower") in favor of CIBC Inc. ("Original Lender")

2.      Mortgage Spreader and Amended, Restated and Consolidated Fee and Leasehold Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of May 31, 2006, made by Borrower in favor of Original Lender.

3.      Assignment of Leases and Rents, dated as of May 31, 2006, made by Borrower in favor of Original Lender

4.      Cash Management Agreement, dated as of May 31, 2006, made by Borrower, Newmark & Company Real Estate, Inc. ("Newmark") and Original Lender.

5.      Indemnity and Guaranty Agreement, dated as of May 31, 2006, made by Mark Karasick ("MK") in favor of Original Lender.

6.      Hazardous Substances Indemnity Agreement, dated as of May 31, 2006, made by MK and Borrower in favor of Original Lender.

7.      Certification of Taxpayer Indemnification Number and Nonforeign Status, executed May 31, 2006 by MK.

8.      Certificate (Lease Form), executed as of May 31, 2006.

9.      Manager's Subordination Agreement, dated as of May _, 2006, made by Newmark in favor of Original Lender.

10.      Post-Closing Agreement letter, dated May 31, 2006, from Borrower to Original Lender.

11.      UCC-1 Financing Statement filed in the Queens County City Register's Office, New York.

12.      UCC-1 Financing Statement filed with the Delaware Secretary of State.

13.      Consent and Ratification Agreement, dated as of July 8, 2009, by and among Borrower and, Bank of America, National Association, as successor by merger to LaSalle Bank National Association as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-CIBC15, Commercial Mortgage Pass-Through Certificates, Series 2006-CIBC15.

23327496v.2

## EXHIBIT B

### Mezzanine Loan Documents

1.      Promissory Note (Note A), dated May 31, 2006, in the original principal sum of $20,300,000, executed by LIC Crown Mezz Borrower LLC ("Mezz Borrower") and made payable to the order of Petra Mortgage Capital Corp. LLC, which was assigned to Petra Fund REIT Corp. pursuant to that certain Note Allonge (Note A) dated as of May 31, 2006, which was further assigned to PETRA CRE CDO 2007-1, LTD. Pursuant to that certain Note Allonge (Note A) dated as of June 27, 2012, which was further assigned to Factory Mezz LLC pursuant to that certain Note Allonge (Note A) dated as of April 17, 2012.

2.      Promissory Note (Note B), dated May 31, 2006, in the original principal sum of $8,000,000, executed by LIC Crown Mezz Borrower LLC ("Mezz Borrower") and made payable to the order of Petra Mortgage Capital Corp. LLC, which was assigned to Petra Fund REIT Corp. pursuant to that certain Note Allonge (Note B) dated as of May 31, 2006, which was further assigned to PETRA CRE CDO 2007-1, LTD. Pursuant to that certain Note Allonge (Note B) dated as of June 27, 2012, which was further assigned to Factory Mezz LLC pursuant to that certain Note Allonge (Note B) dated as of April 17, 2012.

3.      Mezzanine Loan Agreement by and between Mezz Borrower and Petra Mortgage Capital Corp. LLC ("Petra Capital").

4.      Pledge and Security Agreement in favor of Petra Capital.

5.      Guaranty of Recourse Obligations by Mark Karasick and 30th Place Holdings LLC ("30th Place Holdings") in favor of Petra Capital.

6.      Subordinate Cash Management Agreement by and among Mezz Borrower, Petra Capital and National Valley Bank.

7.      Intercreditor Agreement by and between CIBC and Petra Capital.

8.      Instruction to Register Pledge.

9.      Management's Consent and Subordination of Management Agreement and Management Fees made by Mezz Borrower to Petra Capital, and consented to by Manager and LIC Crown Leasehold Owner.

10.      Participation Agreement by and among Petra Fund REIT Corp as a participant ("Participant A-1") and as lender under the Mezzanine Loan Documents (in such capacity, "Mezzanine Lender") and Latus Finance I, LLC ("Participant A-2"; each of Participant A-2 and Participant A-1 are sometime individually referred to as an "Initial Participant" and collectively as the "Initial Participants").

11.      Participation Certificate granted to Participant A-1 as the holder of an 82.332155477032% undivided participation interest in the Mezzanine Loan.

12.    Participation Certificate granted to Participant A-2 as the holder of a 17.667844522968% undivided participation interest in the Mezzanine Loan.

13.    Environmental Indemnity Agreement by Mezz Borrower, Karasick, and 30th Place Holdings (individually and collectively as "Indemnitor"), Petra Capital as Collateral Agent.

14.    Assignment and Assumption Agreement by Petra CRE CDO 2007-1, LTD to Factory Mezz LLC.

15.    Letter to Mezz Borrower by Petra CRE CDO 2007-1, LTD, notifying them that Factory Mezz LLC has purchased their interest in the $28,300,000 Mezzanine Loan.

16.    Letter to Senior Lender by Petra CRE CDO 2007-1, LTD, notifying them that Factory Mezz LLC has purchased their interest in the $28,300,000 Mezzanine Loan.