**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ X
                                                             :    Chapter 11
In re:                                                       :
                                                             :    Case No. 13-13304 (MG)
LIC CROWN MEZZ BORROWER LLC, et al.,                         :
                                                             :    (Jointly Administered)
                                    Debtors.                 :
                                                             :
------------------------------------------------------------ X
```

**INTERIM ORDER (I) AUTHORIZING THE USE**
**OF CASH COLLATERAL; (II) GRANTING ADEQUATE**
**PROTECTION; (III) AUTHORIZING THE DEBTORS TO**
**OBTAIN UNSECURED DEBT; (IV) MODIFYING THE**
**AUTOMATIC STAY; AND (V) SCHEDULING A FINAL HEARING**

Upon the Motion, dated October 10, 2013 (the "Motion") of LIC Crown Mezz Borrower

LLC ("Mezz Borrower"), LIC Crown Leasehold Owner LLC ("Leasehold Owner") and LIC

Crown Fee Owner LLC ("Fee Owner, and collectively with Mezz Borrower and Leasehold

Owner, the "Debtors"), for an order pursuant to sections 105, 361, 362, 363, 364 and 507 of title

11 of the United States Code (the "Bankruptcy Code"), and Rule 4001-2 of the Local Bankruptcy

Rules for the Southern District of New York (the "Local Rules"), seeking entry of an interim

order (this "Interim Order") providing the following relief: (i) authorizing the Debtors' use of

"cash collateral" (the "Cash Collateral") as such term is defined in section 363(a) of the

Bankruptcy Code; (ii) providing adequate protection to U.S. Bank National Association, as

Trustee, successor in interest to Bank of America, National Association, successor by merger to

LaSalle Bank National Association for the registered holders of J.P. Morgan Chase Commercial

Mortgage Securities Trust 2006-CIBC15, Commercial Mortgage Pass-Through Certificates,

Series 2006-CIBC15 (the "Mortgage Lender") and Factory Mezz LLC (the "Mezzanine Lender,"

and with the Mortgage Lender, the "Lenders") for any diminution in value of their interests; (iii)

authorizing the Debtors to obtain unsecured debt out of the ordinary course of business as an

administrative expense for the funding of their operations during the pendency of these chapter

11 cases, to the extent necessary, that shall be allowable as an administrative claim under section

503(b)(1) of the Bankruptcy Code; (iv) vacating and modifying the automatic stay imposed by

section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the

terms and provisions of this Interim Order; and (v) scheduling a final hearing (the "Final

Hearing") to consider the relief requested in the Motion and the entry of a Final Order (as

defined herein); and approving the form of notice with respect to the Final Hearing; all as more

fully described in the Motion; and the Court having reviewed the Motion and the *Declaration of*

*Steven A.  Carlson Pursuant to Local Bankruptcy Rule 1007-2 and 9077-1*, filed

contemporaneously with the Motion, and the evidence submitted or adduced and the arguments

of counsel made at the interim hearing held on October 16, 2013 (the "Interim Hearing"); and

notice of the Interim Hearing having been given in accordance with Bankruptcy Rule 2002,

4001(b) and (d), and 9014, and it appearing that no further notice need be provided; and the

relief requested being within the guidelines for requests for the use of cash collateral set forth in

Local Rule 4001-2; and the relief requested in the Motion being in the best interests of the

Debtors, their estates and their creditors; and the Court having determined that the legal and

factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief

granted herein; and upon all the proceedings before the Court and after due deliberation and

sufficient cause appearing therefor,

     THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND

CONCLUSIONS OF LAW:

A.    Petition Date.  On October 10, 2013 (the "Petition Date"), the Debtors

each filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the Southern District of New York (the "Chapter 11 Cases").

B.    Debtors in Possession.   The Debtors are continuing in the management

and operation of their business and properties as debtors in possession pursuant to sections 1107

and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11

Cases.

C.    Jurisdiction and Venue.   This Court has jurisdiction, pursuant to 28

U.S.C. §§ 157(b) and 1334, over these proceedings and over the persons and property affected

hereby.  Venue for the Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. § 1408.

This is a core proceeding pursuant to 28 U.S.C. § 157(b).

D.    Statutory Committee.  As of the date hereof, the United States Trustee for

the Southern District of New York (the "U.S. Trustee") has not appointed an official committee

of unsecured creditors (a "Creditors' Committee") in these Chapter 11 Cases pursuant to section

1102 of the Bankruptcy Code.

E.    Debtors' Stipulations.  The Debtors admit, stipulate and agree that

(collectively, paragraphs E(a) through E(g) below are referred to herein as the "Debtors'

Stipulations"):

a.    Mortgaged Property.  Leasehold Owner owns the leasehold

interests of that certain improved real property located at 47-44 31st Street, Block 282, Lot 1,

Long Island City, County of Queens, New York (the "Mortgaged Property").

b.    Mortgage Loan.  Fee Owner and Leasehold Owner are parties to a

certain Mortgage Spreader and Amended, Restated and Consolidated Fee and Leasehold

Mortgage, Assignment of Leases and Rents and Security Agreement dated as of May 31, 2006 (the "Senior Mortgage") in the original principal amount of $77,000,000.00 (the "Mortgage Loan").  Pursuant to the Senior Mortgage and other documents ancillary thereto (collectively, the "Senior Loan Documents"), Fee Owner and Leasehold Owner granted liens and security interests in substantially all of their properties to the original lender, CIBC Inc. The Senior Mortgage is currently held by the Mortgage Lender. Fee Owner and Leasehold Owner are jointly and severally liable for the Senior Mortgage. The principal balance on the Mortgage Loan as of October 4, 2013 is approximately $71,559,083.40.

        c.      Mezzanine Loan.  Mezz Borrower is party to a certain Mezzanine Loan Agreement (the "Mezzanine Loan Agreement"), dated as of May 31, 2006, with Petra Mortgage Capital Corp. LLC ("Petra") in the original principal amount of $28,300,000. Pursuant to the Mezzanine Loan Agreement and other documents ancillary thereto (collectively, the "Mezzanine Loan Documents," and together with the Senior Loan Documents, the "Loan Documents"), Mezz Borrower pledged to Petra 100% of its ownership interests in Fee Owner and Leasehold Owner. The Mezzanine Loan is currently held by Mezzanine Lender, as successor to Petra, and is serviced by Atlas Servicing.  The principal balance on the Mezzanine Loan as of October 4, 2013 is approximately $57,022,400.72.

        d.      Guarantee.  Both the Mortgage Loan and the Mezzanine Loan are guaranteed by Mark Karasick, the president of each of the Debtors, and 30th Place Holdings LLC, the sole member of Mezz Borrower under certain circumstances pursuant to the applicable loan documents.

        e.      Validity and Perfection of Mortgage Loan and Mezzanine Loan. The Debtors acknowledge and agree that:  (i) as of the Petition Date, both the Mortgage Loan

(secured by the Mortgaged Property and other collateral (collectively, the "Prepetition Mortgage Collateral"), including all cash generated by the Mortgaged Property, as set forth in the Senior Loan Documents) and the Mezzanine Loan (secured by the equity ownership interest in Fee Owner and Leasehold Owner (the "Prepetition Mezzanine Collateral," and together with the Prepetition Mortgage Collateral, the "Prepetition Collateral")), were valid, binding, enforceable, non-avoidable and properly perfected; (ii) no portion of the Mortgage Loan, the Mortgage Loan Documents, the Mezzanine Loan or the Mezzanine Loan Documents are subject to avoidance, recharacterization, disallowance, disgorgement, recovery or subordination under the Bankruptcy Code or applicable non-bankruptcy law; and (iii) the Debtors and their estates have no claims, objections, challenges, causes of action, and or/choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors and employees arising out of, based upon or related to the Mortgage Loan or Mezzanine Loan.

f.      Cash Collateral.  The Debtors represent that all of the Debtors' cash generated from the Mortgaged Property, whether as original collateral or profits or proceeds of the Mortgaged Property or other Prepetition Collateral, constitutes Cash Collateral.

g.      Default by the Debtors.  The Debtors acknowledge and stipulate that the Debtors are in default of their debts and obligations under the Loan Documents.

F.      Adequate Protection.  The Mortgage Lender is entitled to receive adequate protection in respect of the Debtors' use of the Prepetition Mortgage Collateral, and any decline in the value thereof, resulting from the (a) use of the Cash Collateral, (b) use, sale or depreciation or other diminution in value of the Prepetition Mortgage Collateral, or (c) as a result of the

imposition of the automatic stay under section 362(a) of the Bankruptcy Code (the amount of any such diminution being referred to hereinafter as the "Mortgage Lender Adequate Protection Obligations").  The Mezzanine Lender is entitled to receive adequate protection in respect of the Debtors' use of the Prepetition Mezzanine Collateral, and any decline in the value thereof, resulting from the (a) use of the Cash Collateral, (b) use, sale or depreciation or other diminution in value of the Prepetition Mortgage Collateral, or (c) as a result of the imposition of the automatic stay under section 363(a) of the Bankruptcy Code (the amount of any such diminution being referred to hereinafter as the "Mezzanine Lender Adequate Protection Obligations," and together with the Mortgage Lender Adequate Protection Obligations, the "Adequate Protection Obligations").  Pursuant to sections 361, 363, and 507(b), as adequate protection for the Adequate Protection Obligations, the Debtors have agreed to provide the Lenders with:  (a) the Mortgage Lender Adequate Protection Liens and Mezzanine Lender Adequate Protection Liens; and (b) the Mortgage Lender Adequate Protection Superpriority Claims and Mezzanine Lender Adequate protection Superpriority Claims (each as defined below).  Further, the Debtors have agreed to provide the Mortgage Lender with the Adequate Protection Payments (as defined below).  The Lenders have objected to the use by the Debtors of the Cash Collateral, except on the terms and conditions set forth in this Interim Order.

G.    Necessity of Relief Requested.  The Debtors require the use of Cash Collateral in order to finance their operations, absent which immediate and irreparable harm will result to the Debtors, their estates and creditors, and the prospects for a successful conclusion of the Chapter 11 Cases.  In the absence of the use of Cash Collateral, it would be impossible for the Debtors to continue to operate their business, even for a limited period of time, and serious and irreparable harm to the Debtors, their estates and creditors would occur.  The Debtors do not

have sufficient available sources of working capital and financing to maintain the Mortgaged

Property without the use of Cash Collateral.  Further, in the event that the Cash Collateral is

insufficient to fund the Debtors' operations during the pendency of the Chapter 11 Cases, the

Debtors require a source of unsecured financing.  The relief requested in the Motion is, therefore,

of the utmost significance and importance to the preservation and maintenance of the value of

the Debtors' assets.  The Lenders and the Debtors have negotiated at arms' length and in good

faith regarding the Debtors' use of Cash Collateral to fund the continued operations of the

Debtors for the period through the Termination Declaration Date (as defined below), all subject

to the terms and conditions set forth in this Interim Order, including the protection afforded an

entity acting in "good faith" under section 363(m) of the Bankruptcy Code.  Based on the record

presented to the Court at the Interim Hearing, the terms of the proposed adequate protection

arrangements and the use of the Cash Collateral are fair and reasonable under the circumstances,

reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties

and are supported by reasonably equivalent value and fair consideration.  Entry of this Interim

Order is in the best interests of the Debtors and their estates.

   H. <u>Chief Restructuring Officer</u>.  Prior to the Petition Date, the Debtors

engaged Steven A. Carlson as the Debtors' Chief Restructuring Officer (the "<u>CRO</u>") to oversee

all aspects of the Debtors' business and operations pursuant to a certain Employment Agreement

(the "<u>Employment Agreement</u>"). The CRO continues to manage the Debtors on a postpetition

basis pursuant to the terms of the Employment Agreement.

   I. <u>Final Hearing</u>.  At the Final Hearing, the Debtors will seek final approval

of the relief requested in the Motion for the proposed use of Cash Collateral on a final basis

pursuant to a final order (the "Final Order"), notice of which Final Hearing will be provided in accordance with this Interim Order.

J.       Notice.  Notice of the Interim Hearing and emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including counsel to each of the Lenders, counsel to CIBC Inc., counsel to Petra, the U.S. Trustee, and all those creditors holding unsecured claims against the Debtors' estates (on a consolidated basis).  The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.       Motion Granted.  The Motion is GRANTED, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.       Objections Overruled.  All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

3.       Authorization to Use Cash Collateral.  Subject to the terms of this Interim Order, pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtors are authorized to use Cash Collateral for the period (the "Subject Period") from the Petition Date through the date which is the earliest to occur of (a) December 31, 2013; or (b) a Termination Declaration Date strictly pursuant to and in accordance with the Budget attached hereto as Exhibit A (the "Budget") to satisfy (in the order of) (i) all payments to be made for insurance and taxes; and (ii) operational costs and expenses arising in connection with the administration of the Debtors'

estates.  The Debtors may move amounts between line items on the Budget consistent with

reasonable financial practice, may not exceed any line items on the Budget by more than 5%

without the Lenders' permission and may apply unused amounts for any line item on the Budget

towards the payment of any other line item on the Budget.  Upon the date of the expiration of the

Subject Period (the "Expiration Date"), Debtors' authority to use Cash Collateral shall cease

absent further Order of this Court.

        4.     Cash Management.  The Debtors are hereby authorized to establish,

maintain and use certain bank accounts with respect to the Cash Collateral on a postpetition basis

as follows:

        a.     The Debtors are authorized to open two (2) "debtor in possession"

bank accounts (collectively, the "New Bank Accounts") with Capital One.  These New Bank

Accounts include an operating account and a payroll account.  On and after the Petition Date, the

Debtors will use the New Bank Accounts to collect, transfer, and disburse funds generated by the

Mortgaged Property in the ordinary course of business.  The Debtors will manage their cash

receipts, transfers and disbursements and record such collections, transfers and disbursements

through the New Bank Accounts, as well as through the continuance of the lock box currently in

place (the "Lock Box").  The Debtors will (i) deposit funds in and withdraw funds from the New

Bank Accounts and the Lock Box by all usual means, including, without limitation, checks, wire

transfers and other debits; and (ii) pay any ordinary course bank fees incurred after the Petition

Date in connection with the New Bank Accounts and the Lock Box.

        b.     The Debtors are authorized and empowered to continue to manage

their cash for the purpose of maintaining and paying the expenses of the Mortgaged Property and

related obligations in a manner similar to that utilized prior to the commencement of their

Chapter 11 Cases and to transfer funds between its bank accounts as and when needed and in the

amounts necessary or appropriate to maintain their operations and to facilitate the orderly

operation of their estates.

          c.      The Debtors shall maintain records in a manner consistent with

their prepetition practices, of transfers within the cash management system so that postpetition

transfers and transactions shall be adequately documented in, and readily ascertainable from,

their books and records, to the same extent maintained by the Debtors prior to the

commencement of these Chapter 11 Cases.

          d.      The CRO shall have the authority to engage the current manager of

the Mortgaged Property, Newmark & Company Real Estate d/b/a Newmark Grubb Knight Frank

(the "Manager") to manage the Mortgaged Property, including the collection of rent from tenants

of the Mortgaged Property, consistent with prepetition practices.  The Manager shall periodically

submit requests for approval of payments to the CRO for ultimate approval, detailing all ordinary

course payments for which it seeks approval.  Upon the written approval of the CRO, the

Manager shall remit payments of these ordinary course expenditures from the general operating

account established in connection with the filing of these Chapter 11 Cases (the "Operating

Account").  The Manager may not make any payments that are (a) not in the ordinary course of

business, (b) not approved by the CRO, or (c) inconsistent with the Budget absent prior approval

from the CRO.

         5.      Budget Maintenance.  The Budget and any modifications to, or extensions,

amendments or updates of, the Budget shall be in form and substance acceptable to and approved

in writing by the Lenders, each in its sole discretion.  The Budget may be amended or modified

in writing from time to time only with the written consent of the Lenders, each in its sole

discretion. The Debtors shall deliver to the Lenders on or before the close of business of the

fifteenth day of each month (and if such day is not a business day, then the next succeeding

business day) a (i) comparison for the prior month of actual results of all items contained in the

Budget to the amounts originally contained in the Budget and (ii) cumulative comparison for the

period from the Petition Date through the end of the prior month of the actual results of all items

contained in the Budget to the amounts originally contained in the Budget, in each case along

with such supporting information and additional reporting as the Lenders may request.

6.      Mortgage Lender Adequate Protection Liens.   As adequate protection

against any diminution in value of the Mortgage Lender's interest in the Mortgage Prepetition

Collateral, the Mortgage Lender is hereby granted (effective and perfected as of the Petition Date

and without the necessity of the execution by the Debtors of mortgages, security agreements,

pledge agreements, financing statements or other agreements) a valid and perfected replacement

security interest in, and lien on (the "Mortgage Lender Adequate Protection Liens"), all of the

right, title and interest of the Debtors in, to and under all present and after-acquired property and

assets of the Debtors of any nature whatsoever, whether real or personal, tangible or intangible,

wherever located, including, without limitation, all cash and Cash Collateral of the Debtors

(whether maintained with the Mortgage Lender or any other financial institution) and any

investment of such cash and Cash Collateral, goods, cash-in-advance deposits, contracts, causes

of action, general intangibles, accounts receivable, and other rights to payment, whether arising

before or after the Petition Date, chattel paper, documents, instruments, interests in leaseholds,

real properties, plants, machinery, equipment, patents, copyrights, trademarks, trade names or

other intellectual property, licenses, insurance proceeds, and tort claims, and any and all of the

proceeds, products, offspring, rents and profits thereof, rights under letters of credit, capital stock

and other equity or ownership interests held by the Debtors, including equity interests in

subsidiaries and all other investment property, and the proceeds of all of the foregoing, whether

now existing or hereafter acquired (collectively, the "Mortgage Collateral"), provided, however,

that the Mortgage Collateral shall not include the Debtors' claims and causes of action under

section 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code (collectively, the "Avoidance

Actions") or proceeds thereof.  Subject to the Carve-Out (as defined below), the Mortgage

Lender Adequate Protection Liens shall be (i) first priority perfected liens on all of the Collateral

(defined below)  that is not otherwise encumbered by validly perfected, non-avoidable security

interests or liens as of the Petition Date, (ii) first priority perfected liens on all of the Collateral as

to which the Mortgage Lender had a first priority lien as of the Petition Date, even if such

Collateral is subject to a validly perfected lien that is junior to the lien of the Mortgage Lien, and

(iii) junior perfected liens on all Collateral that is subject to a validly perfected lien with priority

over the Mortgage Lender's liens as of the Petition Date.

       7.     Priority of Adequate Protection Liens. The Mortgage Lender Adequate

Protection Liens shall be enforceable against the Debtors, their estates and any successors

thereto, including without limitation, any trustee or other estate representative appointed in the

Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of

the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing

(collectively, a "Successor Case").  Except as provided herein, the Mortgage Lender Adequate

Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by

any court order heretofore or hereafter entered in the Chapter 11 Cases or any Successor Case,

and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any

Successor Case, or upon the dismissal of the Chapter 11 Cases or any Successor Case.  The

Mortgage Lender Adequate Protection Liens shall not be subject to sections 506(c) (effective upon entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Mortgage Lender Adequate Protection Liens.

8.    <u>Mortgage Lender Adequate Protection Superpriority Claims</u>.  As further adequate protection against any diminution in value of the interests of the Mortgage Lender in the Mortgage Prepetition Collateral, the Mortgage Lender is hereby granted as and to the extent provided by, sections 503(b) and 507(b) of the Bankruptcy Code allowed superpriority administrative expenses claims in the Chapter 11 Cases and any Successor Case in the amount of the Mortgage Lender Adequate Protection Obligations (the "<u>Mortgage Lender Adequate Protection Superpriority Claim</u>").  The Mortgage Lender Adequate Protection Superpriority Claim shall not attach to Avoidance Actions or proceeds thereof.

9.    <u>Priority of Mortgage Lender Adequate Protection Superiority Claims</u>. The Mortgage Lender Adequate Protection Superpriority Claims shall be junior only to the Carve-Out (as defined herein). Except for the Carve-Out, the Mortgage Lender Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

10.    <u>Adequate Protection Payments.</u>  As additional adequate protection against any diminution in value of the interests of the Mortgage Lender in the Prepetition Mortgage

Collateral, commencing with the first full calendar month following the Petition Date, the

Mortgage Lender shall receive adequate protection payments (the "Adequate Protection

Payments") from the Debtors, payable monthly on the first (1st) day of each calendar month, in

an amount equal to the interest at the non-default, contract rate that has accrued in connection

with the Mortgage Loan as of the date of such Adequate Protection Payment.  The Adequate

Protection Payments received by the Mortgage Lender pursuant to this Paragraph 10 shall be

subject to claims pursuant to section 506 of the Bankruptcy Code with respect to

recharacterization; provided, however, the Mortgage Lender reserves all rights to contest

recharacterization.

> 11.    Mezzanine Lender Adequate Protection Liens.  As adequate protection

against any diminution in value of the Mezzanine Prepetition Collateral, the Mezzanine Lender is

hereby granted (effective and perfected as of the Petition Date and without the necessity of the

execution by the Debtors of mortgages, security agreements, pledge agreements, financing

statements or other agreements) a valid and perfected replacement security interest in, and lien

on (the "Mezzanine Lender Adequate Protection Liens"), all of the right, title and interest of the

Debtors in the Prepetition Mezzanine Collateral (the "Mezzanine Collateral," and together with

the Mortgage Collateral, the "Collateral"), provided, however, that the Mezzanine Collateral

shall not include the Prepetition Mortgage Collateral or the Mortgage Collateral or Avoidance

Actions (or proceeds thereof).  Subject to the Carve-Out (as defined below) and the Mortgage

Lender Adequate Protection Liens, the Mezzanine Lender Adequate Protection Liens shall be (i)

first priority perfected liens on all of the Mezzanine Collateral that is not otherwise encumbered

by validly perfected, non-avoidable security interests or liens as of the Petition Date, and (ii)

junior perfected liens on all Mezzanine Collateral that is subject to a validly perfected lien,

including any lien with priority over the Mezzanine Lender's liens as of the Petition Date;

provided however, that the Mezzanine Lender Adequate Protection Liens shall be subordinate to

the Mortgage Lender's Adequate Protection Liens.

12.    Priority of Mezzanine Lender Adequate Protection Liens. The Mezzanine

Lender Adequate Protection Liens shall be enforceable against the Debtors, their estates and any

successors thereto, including without limitation, any trustee or other estate representative

appointed in the Chapter 11 Cases or any Successor Case.  The Mezzanine Lender Adequate

Protection Liens shall be valid and enforceable against any trustee appointed in the Chapter 11

Cases or any Successor Case, or upon the dismissal of the Chapter 11 Cases or any Successor

Case.  The Mezzanine Lender Adequate Protection Liens shall not be subject to sections 506(c)

(effective upon entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code.  No lien or

interest avoided and preserved for the benefit of the estate pursuant to section 551 of the

Bankruptcy Code shall be made *pari passu* with or senior to the Mezzanine Lender Adequate

Protection Liens.

13.    Mezzanine Lender Adequate Protection Superpriority Claims.  As further

adequate protection against any diminution in value of the interests of the Mezzanine Lender in

the Prepetition Mezzanine Collateral, the Mezzanine Lender is hereby granted as and to the

extent provided by sections 503(b) and 507(b) of the Bankruptcy Code allowed superpriority

administrative expenses claims in the Chapter 11 Case and any Successor Case in the amount of

the Adequate Protection Obligations (the "Mezzanine Lender Adequate Protection Superpriority

Claim").  For the avoidance of doubt, the Mezzanine Lender Adequate Protection Superpriority

Claim shall be junior only to the Carve-Out and the Mortgage Lender's Adequate Protection

Superpriority Claim.  The Mezzanine Lender Adequate Protection Superpriority Claims shall not

attach to Avoidance Actions or the proceeds thereof.

14.     <u>Authorization to Incur Unsecured Debt</u>.  To the extent Cash Collateral is

insufficient to fund the Debtors' operations and/or the costs of the Chapter 11 Cases, the Debtors

are hereby authorized to incur additional unsecured debt from the Mezzanine Lender and the

Debtors' principals.  Such credit shall be entitled to administrative status pursuant to sections

364(b) and 503(b)(1) of the Bankruptcy Code.  Pursuant to the Debtors' chapter 11 plan (the

"<u>Plan</u>"), to the extent that the Plan is confirmed, any claims held by Mezzanine Lender and the

Debtors' principals as a result of such postpetition financing shall be waived.

15.     <u>Modification of Automatic Stay</u>.  The automatic stay under Bankruptcy

Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions

of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the

Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors

to perform such acts as the Lenders may request in their respective sole discretion to assure the

perfection and priority of the liens granted herein; and (c) authorize the Debtors to pay, and the

Lenders to retain and apply, payments made in accordance with the terms of this Interim Order,

<u>provided</u>, <u>however</u>, any stay relief with respect to the exercise of remedies shall be in accordance

with Paragraph 13 or as otherwise ordered by the Court.

16.     <u>Perfection of Adequate Protection Liens</u>.  This Interim Order shall be

sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate

Protection Liens, without the necessity of filing or recording any mortgage, financing statement

or other instrument or document which may otherwise be required under the law or regulation of

any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering

16

into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Lenders to the priorities granted herein.  Notwithstanding the foregoing, the Debtors are authorized and directed to execute and deliver promptly to the Lenders all such financing statements, mortgages, notices and other documents as the Lenders may reasonably request, and the Lenders may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instruments.

17.     <u>The Debtors' Obligations</u>.  The Debtors shall, through the CRO:

a.      Utilize Cash Collateral to pay the expenses of its operation of its business as provided in the Budget, in consultation with the Manager and subject to the approval of the CRO;

b.      Deliver to the Lenders on or before the close of business on the fifteenth day of each month (and if such day is not a business day, then the next succeeding business day) a (i) comparison for the prior month of actual results of all items contained in the Budget to the amounts originally contained in the Budget and (ii) cumulative comparison for the period from the Petition Date through the end of the prior week of the actual results of all items contained in the Budget to the amounts originally contained in the Budget, in each case along with such supporting information as the Lenders may request; and

c.      Serve the Lenders and their counsel with a copy of each monthly operating report filed by the Debtors in these Chapter 11 Cases as required by the Court, the U.S. Trustee or applicable law.

18.    <u>Disposition of Collateral</u>. The Debtors shall not sell, transfer, lease,

encumber or otherwise dispose of any material portion of the Mortgage Collateral or Mezzanine

without the prior written consent of the Mortgage Lender and Mezzanine Lender, respectively.

19.    <u>Events of Default</u>. The occurrence of any of the following events, unless

waived by the Lenders, shall constitute an event of default (collectively, the "<u>Events of

Default</u>"):

a.    the failure by the Debtors to perform, in any respect, any of the

terms, provisions, conditions, covenants, or obligations under this Interim Order;

b.    the Debtors' obtaining of credit or the incurring of indebtedness

that is (i) secured by a security interest, mortgage or other lien on all or any portion of the

Collateral which is equal or senior to any security interest, mortgage or other lien of the Lenders,

or (ii) entitled to priority administrative status that is equal or senior to that granted to the

Lenders;

c.    any lien or security interest purported to be created under the Loan

Documents shall cease to be, or shall be asserted by Debtors not to be, a valid and perfected lien

on, or security interest in, any Collateral, with the priority required by the Loan Documents or

herein;

d.    the entry of an order by the Court granting relief from or

modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to

execute upon or enforce a lien on or security interest in any Collateral having a value in excess of

$100,000.00, or (ii) with respect to any lien on or the granting of any lien on any Collateral to

any state or local environmental or regulatory agency or authority, which in either case would

have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtors;

   e. reversal, vacatur, or modification (other than a modification with the express prior written consent of the Lenders) of this Interim Order;

   f. dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to chapter 7 cases, or appointment in the Chapter 11 Case of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

   g. any misrepresentation of a material fact made after the Petition Date by the Debtors or its agents to the Lenders about the financial condition of the Debtors, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral;

   h. a default by the Debtors in reporting financial information as and when required under this Interim Order;

   i. the sale of any material portion of the Debtors' assets outside the ordinary course of business without the prior written consent of both of the Lenders, each in its sole discretion;

   j. the failure to obtain entry of the Final Order by the Court within thirty (30) days following the Petition Date;

   k. the failure to obtain entry of an order of the Bankruptcy Court confirming the Plan on or before February 10, 2013, unless otherwise agreed to in writing by both of the Lenders, or as contemplated specifically by the PSA (defined below);

l.        the occurrence of any Plan Support Default, as defined in that

certain Plan Support and Cooperation Agreement, dated October 2, 2013, between and among

Mortgage Lender, Mezzanine Lender, Debtors, Mark Karasick and 30th Place Holdings LLC;

m.        the failure to comply with the Budget for any period, measured

weekly as of the close of business on Wednesday of each following work week; or

n.        the filing by the Debtors of any motion seeking, or the granting of

any motion providing for, reversal or modification of this Interim Order.

20.        <u>Rights and Remedies Upon Event of Default</u>. Immediately upon the

occurrence and during the continuation of an Event of Default, either Lender may declare a

termination, reduction or restriction of the ability of the Debtors to use any Cash Collateral (any

such declaration, shall be referred to herein as a "<u>Termination Declaration</u>").  The Termination

Declaration shall be given by email or facsimile (or other electronic means) to counsel to the

Debtors, counsel to any Creditors' Committee, counsel to the other Lender, and the U.S. Trustee

(the earliest date any such Termination Declaration is made shall be referred to herein as the

"<u>Termination Declaration Date</u>").  Upon the passage of five (5) days from the Termination

Declaration Date, the Debtors' right to use Cash Collateral shall automatically cease unless the

Debtors shall have cured such Event of Default in full prior to the expiration of such five (5) day

period, and the Debtors shall no longer have the right to use Cash Collateral.  During such five

(5) day period, the Debtors and the Creditors' Committee, if any, shall have the right to seek a

hearing solely for the purpose of seeking a determination of whether an Event of Default has

occurred; upon the filing of a motion on shortened notice seeking such a determination on an

expedited bases, the expiration of the five (5) day period shall be tolled pending the Court's

decision on such motion. Upon the passage of seven (7) days from the Termination Declaration

Date, the automatic stay shall automatically be terminated without further notice or order, and

the Debtors shall no longer have the right to use Cash Collateral and the Lenders shall be

permitted to exercise all remedies set forth herein in the Plan and in the Loan Documents, as

applicable, and as otherwise available at law against the Collateral, without further order of or

application or motion to the Court, and without restriction or restraint by any stay under sections

362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and

security interest in the Collateral or any other rights and remedies granted to the Lenders with

respect thereto pursuant to the Loan Documents or this Interim Order, as applicable.

       21.    <u>Carve-Out</u>. Subject to the terms and conditions contained in this Paragraph

21, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be

subordinate to the following (collectively, the "<u>Carve-Out</u>"): (i) fees pursuant to 28 U.S.C. §

1930(a)(6); (ii) fees payable to the clerk of the Bankruptcy Court and any agent thereof; and (iii)

pursuant to section 726(b) of the Bankruptcy Code, reasonable fees and expenses of a trustee that

are incurred after the conversion of the Chapter 11 Cases to cases under chapter 7 of the

Bankruptcy Code, in an amount not to exceed $50,000.00; (iv) professional fees and expenses

incurred by professionals retained pursuant to sections 327(a) and 1103 of the Bankruptcy Code

by the Debtors and the Creditors' Committee (if such committee should be appointed, in an

amount not to exceed $50,000.00); and (v) the $75,000.00 amount provided by Mezzanine

Lender prior to the Petition Date for the payment of Debtors' legal fees (collectively, the

"<u>Professional Fees</u>").  Payment of any obligations within the Carve-Out shall not and shall not be

deemed to reduce the Mortgage Loan or the Mezzanine Loan or the Adequate Protection

Obligations and shall not and shall not be deemed to subordinate the Adequate Protection Liens

or the Adequate Protection Superpriority Claims to any junior prepetition or postpetition lien,

interest, or claim in favor of any other party.  Nothing in this Paragraph 19 shall alter the

requirements for Court approval and allowance of Professional Fees or the rights of the Debtors,

the Mortgage Lender, the Mezzanine Lender or any other party-in-interest to object to the award

of Professional Fees in accordance with any applicable Bankruptcy Rule or, if applicable, order

of the Court relating to the approval of Professional Fees and objections thereto.

    22. <u>Limitations on the Cash Collateral and the Carve-Out</u>.  The Cash

Collateral may only be used in accordance with the Budget and, in any event, the Cash Collateral

and the Carve-Out may not be used:  (a) in connection with, or to finance in any way, any action,

suit, arbitration, proceeding, application, motion or other litigation of any type (i) against the

Lenders or seeking relief that would impair the Lenders' rights and remedies under the Loan

Documents, the Plan or this Interim Order, including, without limitation, (A) to assert,

commence, or prosecute any claims or causes of action whatsoever, including, without

limitation, any actions under chapter 5 of the Bankruptcy Code, against the Lenders, (B) to

prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent,

amount, perfection, priority, or enforceability of any of the rights and obligations of the Lenders

or seeking affirmative relief against the Lenders, or (C) for the payment of any services rendered

by the professionals retained by the Debtors or any Creditors' Committee in connection with the

assertion of, or joinder in, any claim, counterclaim, action, proceedings, application, motion,

objection, defense or other contested matter, the purpose of which is to seek, or the result of

which would be to obtain, any order, judgment determination, declaration or similar relief that

would impair the ability of the Mortgage Lender to recover on the Mortgage Loan or the

Mezzanine Lender to recover on the Mezzanine Loan, (ii) invalidating, setting aside, avoiding or

subordinating, in whole or in part, the Mortgage Loan or the Mezzanine Loan, (iii) for monetary,

injunctive or other affirmative relief against the Lenders or their collateral, or (iv) preventing,

hindering or otherwise delaying the exercise by the Lenders of any rights and/or remedies under

this Interim Order, the Loan Documents, or applicable law, or the enforcement of realization

(whether by foreclosure, credit bid, further order of the Court or otherwise) by the Lenders upon

any of the Collateral; (b) to make any distribution under the Plan; (c) to make any payment in

settlement of any claim, action or proceeding, before any court, arbitrator or other governmental

body without prior written consent of the Lenders, unless otherwise ordered by the Court; (d) to

pay any fees or similar amounts to any person who has proposed or may propose to purchase

interests in the Debtors without the prior written consent of the Lenders, (e) to object, contest, or

interfere with in any way the enforcement or realization upon any of the Collateral by the

Lenders once an Event of Default has occurred; (f) to sell or otherwise dispose of Collateral

without the prior consent of the Lenders; (g) to pay indebtedness outside the ordinary course of

business without the prior consent of the Lenders; (h) to object to or challenge in any way the

claims, liens, or interests (including interests in the Collateral) held by or on behalf of the

Lenders; or (i) to pay any costs or expenses that are not ordinary course operating expenses of

the Debtors; provided, however, that in the event a Creditor's Committee is appointed in these

Chapter 11 Cases, Cash Collateral in an amount to be determined at the Final Hearing may be

used for the Creditor's Committee for allowed fees and expenses incurred solely by the

Creditor's Committee to conduct an investigation with respect to the validity, amount, extent,

perfection, priority, enforceability, or avoidability of the Mortgage Loan, Mezzanine Loan and

Prepetition Collateral of the Debtors.

23.    <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

24.    <u>Section 506(c) Claims</u>. Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the Lenders or any of their claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

25.    <u>No Marshaling/Application of Proceeds</u>. Upon entry of the Final Order, the Debtors agree that they will not assert that the Lenders' claims are subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, as the case may be, and proceeds shall be received and applied in accordance with this Interim Order notwithstanding any other agreement or provision to the contrary.

26.    <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Lenders' right to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection; (b) any of the rights of the Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Cases or any Successor Case, conversion of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.  Notwithstanding anything to the contrary, the U.S. Trustee reserves its rights to review any line item on the Budget pending entry of a Final Order.

27.    <u>Section 507(b) Reservation</u>. Nothing herein shall impair or modify the

application of section 507(b) of the Bankruptcy Code in the event that the adequate protection

provided to the Lenders hereunder is insufficient to compensate for any diminution in value of

the Lenders' interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor

Case.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgement

by the Lenders, that the adequate protection granted herein does in fact adequately protect the

Lenders against any diminution in value of their interest in the Prepetition Collateral (including

Cash Collateral).

28.    <u>Credit Bidding</u>. To the extent allowed by the Bankruptcy Code, any plan

or motion seeking to sell substantially all the Collateral shall provide for and allow credit bidding

by the Lenders, whether under: (a) section 363(k) of the Bankruptcy Code in the case of a sale

under section 363(b) of the Bankruptcy Code, or (b) a plan provision consistent with the

language of section 363(k) of the Bankruptcy Code, including, without limitation, section

1129(b)(2)(a)(iii).

29.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the Lenders to seek

relief or otherwise exercise their rights and remedies under this Interim Order or applicable law,

as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise

of the Lenders.

30.    <u>Proofs of Claim</u>.  The Lenders will not be required to file a proof of claim

in the Chapter 11 Cases or a Successor Case for their claims to be allowed, and the Debtors'

Stipulations shall be deemed to constitute a timely filed proof of claim.  Any order entered by the

Court in relation to the establishment of a bar date for any claim (including, without limitation,

administrative claims) in the Chapter 11 Cases or a Successor Case shall not apply to the

Lenders.

31.    <u>Good Faith</u>.  The Lenders have acted in good faith in connection with this

Interim Order and their reliance on this Interim Order is in good faith.

32.    <u>Binding Effect of Interim Order</u>.  This Interim Order shall constitute

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect

and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

Immediately upon entry by this Court (notwithstanding any applicable law or rule to the

contrary), the terms and provisions of this Interim Order shall become valid and binding upon

and inure to the benefit of the Debtors, the Lenders, the U.S. Trustee, all other creditors of any of

the Debtors, any committee appointed in the Chapter 11 Cases, and all other parties in interest

and their respective successors and assigns, including any trustee or other fiduciary hereafter

appointed in the Chapter 11 Cases, any Successor Case, or upon dismissal of the Chapter 11

Cases or a Successor Case. In the event of any inconsistency between the provisions of this

Interim Order and any other order (including any "First Day" orders), the provisions of this

Interim Order shall govern and control.  Any payments to be made under any order (including

any "First Day" order) shall be made in accordance with this Interim Order and the Budget.

33.    <u>No Modification of Interim Order</u>. The Debtors irrevocably waive any

right to seek any amendment, modification or extension of this Interim Order without the prior

written consent of the Lenders, and no such consent shall be implied by any other action,

inaction or acquiescence of the Lenders.  In the event any or all of the provisions of this Interim

Order are hereafter modified, amended or vacated by a subsequent order of this Court or any

other court, such modification, amendment or vacatur shall not affect the validity, perfection,

priority, allowability, enforceability or non-availability of any advances, payments or use of cash

whether previously made or made hereunder, or lien, claim or priority authorized or created

hereby.  Any liens or claims granted to the Lenders hereunder arising prior to the effective date

of any such modification, amendment or vacatur of this Interim Order shall be governed in all

respects by the original provisions of this Interim Order, including entitlement to all rights,

remedies, privileges and benefits granted herein.

   34. <u>Survival</u>.  The provisions of this Interim Order and any actions taken

pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan

of liquidation in the Chapter 11 Cases; (b) converting the Chapter 11 Cases to cases under

chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 Cases or any Successor Case; or

(d) pursuant to which this Court abstains from hearing the Chapter 11 Cases or a Successor Case.

The terms and provisions of this Interim Order, including the claims, liens, security interests and

other protections granted to the Lenders pursuant to this Interim Order, notwithstanding the entry

of any such order, shall continue in the Chapter 11 Cases, in any Successor Case, or following

dismissal of the Chapter 11 Cases or any Successor Case, and shall maintain their priority as

provided by this Interim Order until the Mortgage Loan has been indefeasibly paid in full.

   35. <u>Final Hearing</u>.  A final hearing on the Motion is scheduled for November

5, 2013 at 11:00 a.m. (Eastern Time) before the Honorable Martin Glenn, United States

Bankruptcy Court for the Southern District of New York.  On or before October 22, 2013, notice

of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>") shall be

served, by United States mail, first-class postage prepaid, together with a copy of this Interim

Order and the Motion on: (a) the parties having been given notice of the Interim Hearing; (b) any

party which has filed prior to such date a request for notices with this Court; (c) counsel for any

Creditors' Committee.  The Final Hearing Notice shall state that any party-in-interest objecting

to the relief requested in the Motion on a final basis shall file written objections with the Clerk of

the Court no later than November 4, 2013 at 11:00 a.m. (Eastern Time), which objections shall

be served so as to be received on or before such date by: : (i) proposed counsel to the Debtors,

Klestadt & Winters, LLP, 570 Seventh Avenue, 17th Floor, New York, New York 10018-6314,

Attn:  Tracy L. Klestadt and Joseph C. Corneau; (ii) counsel to the Mortgage Lender, Weil,

Gotshal & Manges LLP, 767 Fifth Avenue, New York New York 10153, Attn:  Alfredo Perez;

(iii) counsel to the Mezzanine Lender, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., 666

Third Avenue, New York, New York 10017, Attn:  John H. Bae and Kaitlin R. Walsh; (iii)

counsel to any Creditors' Committee; and (iv) the Office of the U.S. Trustee for the Southern

District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York,

New York 10014, Attn: Paul Schwartzberg.

36.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to

enforce this Interim Order according to its terms.

Dated: October 17, 2013
      New York, New York

                                       **/s/Martin Glenn**
                                       MARTIN GLENN
                          United States Bankruptcy Judge

# EXHIBIT A

**(Budget)**